## WILLIAM VINCENT, APPELLANT, *v.* THOMAS LARSON ET AL., RESPONDENTS.

EXECUTORY CONTRACT—CONSIDERATION—EVIDENCE.—It is competent for a party to an executory contract to show by parol evidence that the consideration has been paid.

WRITTEN CONTRACT, EXTRINSIC EVIDENCE TO EXPLAIN.—Extrinsic evidence is admissible to explain the recitals and promises of a written contract.

SPECIFIC PERFORMANCE—DISCRETION OF COURTS.—The specific performance of a contract is not a matter of right, strictly speaking, but a matter in the sound and reasonable discretion of the court.

APPEAL from the second judicial district, Owyhee county.

*F. Ganahl and J. C. Henly,* for the appellant.

*Henry Martin,* for the respondents.

Opinion by KELLY, J.; BOWERS, C. J., and MILLER, J., concurring.

Bill in chancery for the specific performance of a contract for the purchase and sale of certain mining ground, three hundred and fifty feet in the second south extension of the Oro Fino quartz lode. The case comes before us on appeal from the judgment of the court below, sustaining two demurrers to the bill. The bill avers the sale to plaintiff by Larson of certain mining ground, situated in Owyhee county, and consisting of three hundred and fifty feet of a quartz vein, on the thirteenth day of April, 1868; that on that day the defendant, Larson, executed and delivered to plaintiff a writing obligatory, under seal, stamped and acknowledged and recorded, by which he agreed to convey to plaintiff three hundred and fifty feet of a quartz lode—on the payment to him by plaintiff of the sum of five thousand two hundred and fifty dollars in coin, on or before the first day of June, 1868; that on the said thirteenth day of April, 1838, and after the execution of the instrument by him, defendant delivered lawful and peaceable possession of said three hundred and fifty feet of mining ground to plaintiff; that plaintiff entered into possession thereof; opened and developed the same; expended over one thousand dollars in so doing, and made all his preparations to continue the work-

ing thereof; and by his labor thereon, the said mining. ground has been proved to be of great value; that on the first day of June, 1868, he tendered to Larson the full amount of the purchase money in coin—five thousand two hundred and fifty dollars, and demanded of Larson a deed to said premises; that Larson refused to execute said deed; that he now brings the money into court and tenders it in payment for said mining ground; that Larson is wholly irresponsible and insolvent, etc., and asks that Larson be compelled to convey.

The points raised by respondents' counsel in the argument of the demurrer go to the validity of the contract or agreement between the parties for the purchase of the mine. For the purpose of considering these questions, we will give the language specially referred to in the contract. After reciting in the usual form that the said Thomas Larson is held and bound unto William Vincent in the penal sum of five thousand· two hundred and fifty dollars, for which he will well and truly pay, etc., the condition is recited in the following words: "The conditions of the above obligation are such that whereas the above-bounden Thomas Larson has on the day of the date hereof sold to said William Vincent the following-described property, to wit: [here follows a description of the mining ground] for the sum of fifteen dollars per foot in coin, amounting to the sum of five thousand two hundred and fifty dollars, which said sum of money is to be paid to the said Thomas Larson, in coin, on or before the first day of June, 1868, and the said Thomas Larson shall, on the first day of June, 1868, or at any time before, on the payment of said sum of money, so to be paid as aforesaid, make, execute, stamp and deliver unto the said William Vincent, or to such person or persons as he may designate, a good and sufficient deed or deeds of conveyance of the said mining property heretofore described. Now, if the said William Vincent shall fail to pay the said sum of money at the time aforesaid; or if the said William Vincent shall so pay the said sum of money at or before the time aforesaid, and the said Thomas Larson shall upon such payment well and faithfully on his part perform the cove-

nants herein, then this obligation to be null and void, otherwise to be and remain in full force and effect."

The grounds presented by the demurrer are:

1. That the contract sought to be specifically enforced is without consideration.

2. That the contract lacks the essential element of mutuality.

3. That it is not a matter of right to grant specific performance.

It is contended by respondents' counsel that this instrument constitutes the whole contract; that no evidence can be introduced *aliunde* to show that plaintiff entered into the possession of the premises, made improvements, paid or offered the purchase money, or in any way accepted the contract. Strictly speaking, all contracts are the subject of an offer. If one party says, "I will give you so much money for this thing," or the other says, "I will give you this thing for so much money," all agree that this is an offer to sell or buy, and if the offer is accepted, it ripens into a contract. To execute the contract, one party must pay the money, and the other must deliver the thing sold. But the execution of the contract is an independent matter, and may or may not immediately follow the contract. It may be immediately executed by one party and not by the other. Then the party who has executed would have a right to compel the other party to execute his part of the contract. If we take into consideration the force of the contract as contradistinguished from the execution of the contract, we shall not be at a loss to determine what evidence may be introduced to compel the performance or execution of the contract. Thus, if A. was to enter into a written contract to haul all the logs on a certain lot by a certain time for a specified price, no one would pretend that A., after reciting the contract, could not set up that he had hauled the logs within the time specified, and payment was refused. In fact, he must do so, and must substantiate it by proof, to entitle him to recover. It is true that hauling the logs was his part of the contract, but it was the performance, and if declared upon according to the tenure of the contract, his

right to show the fact by parol evidence would be absolute, for it could not be ingrafted into the contract, when the performance was to take place within a limited time thereafter. Again, if notes had been given for the consideration money for the conveyance of land, could there be any doubt that such notes would be recoverable, when the deed expressed that the consideration had been paid in hand? Now, it is certain that the consideration can be inquired into by the contracting parties; yet, if you produce the higher proof arising from the deed when the consideration is confessed to be paid, it will not defeat a recovery on the notes; so when to parties make a joint conveyance of land, and the purchase money is paid to one, the other party may sue the one and recover the money for his share, notwithstanding the recital in the deed, that the money was paid to both. He is entitled to show by parol evidence the true fact, and if he is entitled to more than half the money, he may go beyond the deed, and show what share of the property he actually conveyed, in order to determine his share of the money.

Now, if A. give B. his bond or note, it would be not only extravagant, but wholly inconsistent with the character of the transaction to recite in the obligation that it was delivered and in the possession of A; still we would set that fact up in the complaint if suit was brought, with the right to prove it by parol evidence, nor is it common to make recitals of delivery in any contracts, notwithstanding delivery, possession, or performance must be averred when suit is brought by a party entitled to recover, and that averment must be made good by evidence beyond the contract itself.

Hence, it is certain that some evidence without must be admissible in the explanation or interpretation of every contract, however plain the meaning of the contract, or intelligible and certain its language. "Extrinsic evidence is admissible to identify its subjects, or its objects, or to explain its recitals or its promises, so far, and only so far, as it can be done without any contradiction of, or any departure from, the meaning which is given by a fair and rational

interpretation of the words actually used." The bill in this
case avers the acceptance by plaintiff, by entering into the
possession, developing the mine, expending large sums of
money, and, lastly, by offering the full payment of the pur-
chase money, on the first day of June, 1868.

Says Judge Story: "A court of chancery will look to the
substance and not the form of the contract." "The juris-
diction of courts of equity to decree a specific perform-
ance of contracts, is not dependent upon, or affected by
the form or character of the instrument. What these
courts seek to be satisfied of is that the transaction in
substance amounts to, and is intended to be, a binding
agreement for a specific object, whatever may be the form
or character of the instrument. Thus if a bond with a
penalty is made upon condition to convey certain lands
upon the payment of a certain price, it will be deemed, in
equity, an agreement to convey the land at all events, and
not to be discharged by the payment of the penalty, al-
though it has assumed the form of a condition only. Courts
of equity in all cases of this sort look to the substance of
the transaction, and the primary object of the parties." (2
Story Eq. sec. 715.) The "substance of the transac-
tion, and the primary object of the parties" in this case
was the sale of the mining ground in question. The bond
in question was a written offer to sell, at a given price, pro-
vided payment should be made on or at any time before the
first day of June, 1868. It is signed by the party to be
charged, Larson, and expresses a consideration or imports
one because under seal, and therefore is not within the
statute of frauds. It has been accepted by the plaintiff,
and is so averred in the bill, and being so accepted, the offer
and its acceptance constitute the entire contract which is
sought to be enforced. But respondents' counsel say there
is no consideration. They take it that a consideration of
some sort or other is absolutely necessary to form a good
contract, that a *nudum pactum*, or an agreement to do or to
pay anything on one side, without any compensation to the
other, is totally void in law, and a man can not be com-
pelled to perform it.

If we take an abstract view of the question, that may be true, for the bond does not recite that Vincent paid Larson anything to make or keep the offer good. But we must not stop with this narrow construction of a question which admits a more enlarged view, and certainly many qualifications. We have said that this contract was under seal. Now, it can not be denied that contracts under seal are valid without a consideration expressed. Express contracts are specialties, or those which are made under seal, as deeds, bonds, and the like; they are not merely written, but delivered over by the party bound. The solemnity and deliberation with which, on account of the ceremonies to be observed, a deed or bond is presumed to be entered into, attach an importance and character which do not belong to a simple contract. In the case of a specialty, no consideration is necessary to give it validity, even in a court of equity. (3 Bing. 111, 112.) Such is the character of bonds of public officers, enfeoffments, deeds poll, covenants to renew, or perhaps more properly speaking, every bond imports in itself a sufficient consideration. Negotiable instruments, as bills of exchange and promissory notes, carry with them *prima facie* evidence of consideration. But suppose we consider this bond or agreement as an offer only. Strictly speaking, all contracts are made by saying I will give you this thing for this money, or I will give you this money for this thing. The offer must be before the acceptance. If it is accepted at once, it then becomes a binding contract. But it is not necessary that the offer should follow instantaneously. So long as the parties remain together and talk over the matter, if it is not expressly withdrawn, the offer is binding, if accepted. As a general rule the offer will continue only for a reasonable time. If the party addressed go away without accepting then he will be too late to come back and bind the proposer by accepting, unless the proposer shall assent in turn. All the law writers agree in this proposition. "The proposer may, himself, determine how long the offer shall continue. He may say, I will give you an hour, or until this time to-morrow, or next week, to make up your mind. Then the party to whom

the proposition is made knows how long the offer is to continue. He may avail himself of the hour, the day, or the week given for inquiry or consideration, or making the necessary arrangements; and if within the prescribed time he expresses his assent [supposing the proposition not in the mean time withdrawn], he completes the contract as effectually as if he had answered in the same way at the first moment after the offer was made." Parsons on Contracts, vol. 1, 435; Story do., 381; Chitty do., 12–14. The only difference has been to enlarge the rule, so that the party who makes an offer on time, shall not be entitled to withdraw it before the lapse of the appointed time. Such is the doctrine in France, Scotland, and Holland; and in Louisiana, where the civil law was borrowed from the Romans. And many eminent law-writers argue that it is more consonant with the principles of justice to hold, that whenever an offer is made, granting to a party a certain time, within which he is to be entitled to decide as to whether he will accept it or not, the party making such offer is not at liberty to withdraw it before the lapse of the appointed time, unless by agreement with the other party. Chief Justice Story says:

" The reason which is given that the offer is without consideration and gratuitous, until accepted, does not seem to be well founded. The consideration is the expectation or hope that the offer will be accepted, and this is sufficient legally to support the promise. The agreement is therefore to be looked upon as an engagement by the one party that he will not sell within a certain time, in consideration that the other party will consider the matter and not give a refusal at once. Again, the making of such an offer might betray the other party into a loss of time and money by inducing him to make examination and to inquire into the value of the goods offered; and this inconvenience assumed by him is a sufficent consideration for the offer. Suppose that on faith of the offer he proceeds to make arrangements to enable him to purchase, or to make calculations to determine whether he is in a condition to buy, or whether the offer is worth accepting, and is fairly exerting

his best judgment on the matter, is there any justice in allowing the other party to interfere and break his promise, after inducing a loss of time, or money, or convenience?"

Says Chief Justice Marshall, in the case of *Violet* v. *Patten*, 5 Cranch, 142: "To constitute a consideration it is not necessary that a benefit should accrue to the person making the promise. It is sufficient that something valuable flows from the person to whom it is made, and that the promise is the inducement to the transaction."

Now, in the case in question, did not Larson expect that some advantage would flow to him from Vincent for making the offer, or hope for it at least? It would seem that any gain to the promisor, or loss to the promisee, however trifling, ought to be sufficient consideration to support an express promise. In other words, should not the offer and acceptance be taken as simultaneous acts, and stand together as constituting an entire agreement, and such a one as the courts ought to enforce?

But admit that there is some difference of authority in regard to allowing the proposer to withdraw his offer, we can not do less than adopt the English law; on which all the authorities say that the acceptance is binding when the proposer does not withdraw his offer, and if the contract is under seal it expresses a consideration.

The bill in this case avers the contract under seal, avers acceptance by entering into possession under the contract, the development of the mine, expending large sums of money, and lastly, by offering the full payment of the purchase money on the first day of June, 1868. All this is taken as confessed by the demurrer, for which reason we must consider this agreement valid and binding.

In 3 Cushing, 224, *Boston and Maine Railroad* v. *Bartlett*, it was held that a proposition in writing to sell land at a certain price, if taken within thirty days, is a continuing offer, which may be retracted at any time; but if, not being retracted, it is accepted within the time, such offer and acceptance constitute a valid contract, the specific performance of which may be enforced by a bill in chancery. Fletcher, J., there observed: "In the present case, though the writing

signed by the defendant was but an offer, and an offer which might be revoked, yet while it remained in force and un-revoked, it was a continuing offer during the time limited for acceptance; and during the whole of that time it was an offer every instant; but as soon as it was accepted it ceased to be an offer merely, and then ripened into a contract. The counsel for the defendant is most surely in the right in say-ing that the writing when made was without consideration, and did not therefore form a contract. It was then but an offer to contract; and the parties making the offer most un-doubtedly might have withdrawn it at any time before ac-ceptance. But when the offer was accepted the minds of the parties met, and the contract was complete. There was then the meeting of the minds of the parties, which con-stitutes and is the definition of a contract. The acceptance by the plaintiffs constituted a sufficient legal consideration for the engagement on the part of the defendants. There was then nothing wanting in order to perfect a valid con-tract on the part of the defendants. It is precisely as if the parties had met at the time of the acceptance, and the offer had been made and accepted and the bargain had been completed at once."

This case is precisely analogous to the one now before us, only in this the court do not say that the contract was under seal, and probably it was not, for the court says the accept-ance by the plaintiff constitutes a sufficient legal consider-ation for the engagement on the part of the defendant.

In a recent case in Massachusetts the court says: "A bill in equity to compel specific performance of a bond in com-mon form, conditioned to convey to the complainant a par-cel of land in the country, upon the payment of a stipulated price, on or before the first day of April, which alleges that the complainant, after date of the bond, occupied and im-proved the land with the respondent's knowledge and con-. sent, and tendered the price on the twenty-fifth day of May next ensuing, is not demurrable upon the ground that time was the essence of the contract." (*Bernard* v. *Lee,* 97 Mass. 92.) Courts have gone still further, and in peculiar circumstances will enforce parol contracts for the convey-

ance of land.  (*Le Fevre* v. *Le Fevre*, 4 Serg. & R. 240.
See also Dart on Vendors and Purchasers of Real Estate,
476; also note 1, 2 Story Eq., sec. 768.)  It is unnecessary
to discuss this part of the subject any further, or multiply
authorities upon the point.  It is sufficient to consider that
the whole weight of authorities go to support the consider-
ation as alleged in the plaintiff's bill.

The respondent says there is no mutuality in this con-
tract.  Under this head they urge that the plaintiff, not
having signed the contract, there is nothing binding, for one
can not be bound without the other.  The contract was
signed by Larson, the party to be charged.  The name of
Vincent was mentioned in the body of the contract, declar-
ing that the contract run from Larson to him.  This was
necessary, because the contract must run to somebody in
order to give a right.  Vincent was that person; it was put
there by his direction and consent.  His name is as much
in the contract as Larson's, for the purposes of the offer,
and would bind him as much as it would Larson the mo-
ment he accepted the offer in full.

In the case of *Coleman* v. *Upcot*, 5 Vin. 527, pl., the
court held "that an agreement concerning land was within
the statute, if signed by the party to be charged; and there
was no need of its being signed by both parties, as the
plaintiff, by his bill for a specific performance, had submit-
ted to perform what was required on his part to be per-
formed."  The same question is reviewed in the case of
*Clayson* v. *Baily*, 14 Johns. 484, and fully discussed and
numerous authorities cited.

It is so well settled in this country and in England that
there is nothing to disturb the strong and united current of
authority, that it is sufficient that the contract is signed by
the party to be charged.  Notwithstanding the opinion of
Lord Radsdale to the contrary, quoted by the respondents;
for that opinion is now universally overruled.  Again, the
respondent says the contract must be of such a nature as
to give a right to one party as well as the other.  We think
this statement must be taken with some qualifications.
"The contract may be of such a nature as to give a right

to the performance to the one party which it does not give to the other. As, for instance, where a lessor covenants to renew upon the request of his lessee, or where the agreement is in the nature of an undertaking. But the more accurate view of such cases as the first, perhaps of all that could be quoted as wanting mutuality, seems to be that they are conditional contracts. And when the condition has been made absolute, as, for instance, by a request to review, they would seem to be mutual, and capable of enforcement by either party." (Fry on Special Performance, sec. 291.)

. Nor can it be sustained upon any very good ground that the right to renew is based upon the consideration in the old lease. We know that courts have sometimes so held, but it seems more like an apology for a reason than any reason actually shown. Suppose the covenant had been on the part of the lessee, leaving it optional with the lessor or not, should we say the right to compel a renewal was based upon the ground that the lessor had had a former lease of the promise, and that was a consideration in a subsequent offer? Is it not more reasonable to say that the obligations in the old lease were mutual, and both were discharged, and the covenant to renew is the renewal of the old covenant in the nature of a special undertaking, to be accepted or not by the lessee? So it might be said of leases when there is a covenant to sell, leaving it optional with the lessee to purchase at the expiration of his lease. Or, to use the words of Mr. Fry, and say "it is a continuing contract at the option of the lessee to determine it."

We have said so much incidentally on this question, it needs but little to explain wherein lies the mutuality of this contract, viewing the contract as an offer on time, and every instant an offer until accepted, and the contract being in all its terms absolute by paying the money or offering the same, the contract was then perfect and binding on one party as much as the other. To say that Larson could not enforce the contract before it was accepted, would be saying what every proposer might say and continue to say as long as he was submitting his proposition; but he could not say so

after his proposition had been accepted. It is a self-evident proposition, as much as two and two make four, that Larson could enforce this contract the moment it was completed, and could ever since do so by accepting the money, to wit, the five thousand two hundred and fifty dollars, which all agreed was the consideration to be paid.

Again, the respondents say it is not a matter of right to grant specific performance of contracts. They do truthfully state this proposition. It is not a matter of right in either party, but, as Judge Story says: "It is a matter of discretion in the court; not, indeed, of arbitrary or capricious discretion, dependent upon the mere pleasure of the judge, but that sound and reasonable discretion which governs itself, as far as it may, by general rules and principles; but at the same time which withholds or grants relief, according to the circumstances of each particular case, when these rules will not furnish any exact measure of justice between the parties."

Human laws are too uncertain and humanity too imperfect to prescribe a rule for every imaginable question. Something must be left to the judge. Some discretion must be exercised by the court in the administration of justice, or we shall fall far short of doing unto others as we would that others should do unto us. It is true, we learn justice from the law, and from our innate knowledge of right and wrong, and with the application of legal learning, correcting and distinguishing it as best we may, for the purposes of administration. Equity sometimes stops short of the law, and sometimes goes far beyond. Whoever should undertake to lay down rules and principles, as absolute authority to govern all cases, would fall far short of administering justice in any court. But guided by the unerring knowledge of the past in the administration of justice, we shall find a safe and convenient guide to our future inquiries, and with little hesitancy be able to apply them with beneficial interest to all the transactions of men.

We have already shown that the courts of equity will look at the substance of the transaction to see if it is a binding agreement for a specific object. If a court of law

is inadequate to relieve the injured party, only by a compensation in damages, a court of equity will redress the wrong by declaring a performance in specie. The judgment of a court of law operates on the right of a party, and the decree of a court of equity on the person. This constitutes the distinction between a court of equity and a court of law, on the ground that damages at law may not in the particular case afford a complete remedy.

"The cases in which a court of equity decrees specific performance of contracts, are those where damages recovered at law would not answer the intention of the parties in making the contract." (*Seymour* v. *Delaney*, 3 Cow. 445.)

"The court decreed specific performance of a contract for the sale of lands, though the contract was in the form of a penal bond, and defendant resided out of the state." (*Telfair* v. *Telfair*, 2 Desau. 271.)

"When, from the nature of the relief sought, performance of a covenant in specie will alone answer the purposes of justice, the court of chancery will compel a specific performance instead of leaving the complainant to an inadequate remedy at law." (*Stuyvesant* v. *Mayor etc. of New York*, 11 Paige, 414.)

"Equity views a bond conditioned to convey land as articles of agreement, and will decree a specific performance of the condition." (1 Gilman, 454.)

"This court has power to decree specific performance of a bond with a penalty, conditioned for the conveyance of land." (*Ensign* v. *Kellogg*, 4 Pick. 1.)

"Equity may decree the performance of a general covenant of indemnity, though it sounds only in damages." (*Champion* v. *Brown*, 5 Johns. Ch. 406.) See also *Parkhurst et al.* v. *Vancourtland*, 14 Johns. 15.

Now, is there anything inadequate in decreeing the specific performance of the contract at bar? On the contrary, from a survey of the whole case, all the equities appear to be with the plaintiff.

He entered into possession of the mining ground under the bond, and was inducted into possession by defendant, opened the mine, expended money, and made the mine

valuable; and on the day fixed in the bond, offered full payment of the agreed purchase money; defendant all the while standing by silent, and without revoking the offer made in the bond. Such an agreement is a direct encouragement to expend money, and it would be against all conscience to annul it, as soon as the benefit expected from the expenditure is beginning to be perceived. He can not now, after the contract being thus executed, be allowed to interpose his defense by demurrer. To allow such a course, would be clearly against equity and good conscience.

Judgment reversed and cause remanded with directions to the court below to overrule the demurrers to the complaint and to allow the defendants to answer.