(December 30, 1925.)

# BENEWAH CREEK IMPROVEMENTS, LAND & LOGGING COMPANY, a Corporation, Appellant, v. MILWAUKEE LUMBER COMPANY, a Corporation, and FRED HERRICK, Respondents.

[242 Pac. 793.]

SPECIFIC PERFORMANCE—PENALTY OR FORFEITURE FOR BREACH OF CONTRACT — LIQUIDATED DAMAGES — WHEN PERFORMANCE ENFORCED WITHOUT PENALTY—MANDATORY INJUNCTION.

1. Where a contract contains provisions for the performance or nonperformance of acts which are not measurable by an exact pecuniary standard, and also one or more other acts in respect of which damages are easily ascertainable by a jury, and a certain sum is stipulated to be paid upon a violation of any or all of such provisions, such sum will be taken to be a penalty.

2. Where a party has contracted to do a certain act or to refrain from doing a certain act and has made himself liable to a penalty for the purpose of insuring performance or nonperformance, a court of equity will, if the contract is otherwise one which calls for its interposition, compel such party to specifically perform, or restrain him from committing the act, as the case may be, notwithstanding the penalty prescribed.

3. Equitable relief with regard to the specific performance of a contract is not a matter of strict right but rests in the sound discretion of the court, to be judicially exercised in view of all the circumstances surrounding the matter in controversy, the language employed in the contract, the intention of the parties, and whether or not the damages sustained are ascertainable in whole or in part, and whether relief may be afforded by a mandatory injunction.

1. Forfeiture stipulated for breach of contract as liquidated damages or penalty, see notes in 1 Ann. Cas. 244; 10 Ann. Cas. 225; Ann. Cas. 1912C, 1021; Ann. Cas. 1915C, 945; Ann. Cas. 1916C, 339; Ann. Cas. 1916B, 197; Ann. Cas. 1917D, 739. See, also, 8 R. C. L. 571.

3. Specific performance of contracts, see note in 23 Am. Dec. 423. See, also, 25 R. C. L. 214.

4. Where in an action for specific performance the relief sought is far in excess of the consideration moving under the contract to the party against whom relief is sought, and to enforce the contract literally as regards penalty for nonperformance would require such party to pay the equivalent of a sum far in excess of the damages suffered, a court of equity will require a specific performance of the contract and refuse to construe it as one providing for liquidated damages.

4. Stipulation in contract for forfeiture of specified sum in case of breach as defense to action for specific performance, see note in **8 Ann. Cas. 359.** See, also, **25 R. C. L. 230.**

APPEAL from the District Court of the Eighth Judicial District, for Benewah County. Hon. Edgar C. Steele, Judge.

Action for the specific performance of a contract. Judgment for defendants. *Reversed.*

Ezra R. Whitla and Wm. D. Keeton, for Appellants.

Courts will enforce the contract as written. (*Heslin v. Eastern B. & L. Assn.*, 28 Misc. 376, 59 N. Y. Supp. 572; *Gazos Creek M. & Lbr. Co. v. Coburn*, 8 Cal. App. 150, 96 Pac. 359; *Jewell Tea Co. v. Watkins*, 26 Colo. App. 494, 145 Pac. 719; *Kupfersmith v. Delaware Ins. Co.*, 84 N. J. L. 271, 86 Atl. 399, 45 L. R. A., N. S., 847; *Scheuerman v. Mathison*, 74 Or. 40, 144 Pac. 1177; 9 Cyc. 587; *Johnson v. Geddes*, 49 Utah, 137, 161 Pac. 910; *Kanaskat Lumber & S. Co. v. Cascade Timber Co.*, 80 Wash. 561, 142 Pac. 15; *Zohrlaut v. Mengelberg*, 144 Wis. 564, 124 N. W. 247; *Hughes Produce Co. v. Pulley*, 47 Utah, 544, 155 Pac. 337, L. R. A. 1916D, 728; *Building & L. Assn. v. Walker*, 59 Neb. 456, 81 N. W. 308; *Brian v. Oregon Short L. Ry. Co.*, 40 Mont. 109, 20 Ann. Cas. 311, 105 Pac. 489 25 L. R. A., N. S., 459; *Thayer v. Augustine*, 55 Mich. 187, 54 Am. Rep. 361, 20 N. W. 898; *Machold v. Farnan*, 14 Ida. 258, 94 Pac. 170; *Bennett v. Hyde*, 92 Cal. 131, 28 Pac. 104; *Smith v. Krall*, 9 Ida. 535, 75 Pac. 263.)

There was ample consideration in this case. (*Hind v. Holship*, 2 Watts (Pa.), 104, 26 Am. Dec. 107; *Visalia Gas & E. Co. v. Sims*, 104 Cal. 326, 43 Am. St. 105, 37 Pac. 1042; *Presbyterian Board of Missions v. Smith*, 209 Pa. 361, 58

Atl. 689; *Rollins v. Hare,* 15 Ind. App. 677, 44 N. E. 374; *Thompson Co. v. Pennebaker,* 173 Fed. 849.)

Inadequacy of consideration alone is no defense. (*Ullsperger v. Meyer,* 217 Ill. 262, 75 N. E. 482, 2 L. R. A., N. S., 221; *Erwin v. Parham,* 12 How. (U. S.) 197, 13 L. ed. 952; *Bradley v. Heyward,* 164 Fed. 107; *Morrow v. Mathews,* 10 Ida. 423, 79 Pac. 196; *Telegraph Phone Corp. v. Canadian Phone Co.,* 103 Me. 444, 69 Atl. 767.)

The provision of the contract to turn over the property to the appellant is for liquidated damages. (1 Pomeroy, Eq. Jur., secs. 442, 450; *Fasler v. Beard,* 30 Minn. 32, 38 N. W. 755; *Tobler v. Austin,* 22 Tex. Civ. App. 99, 53 S. W. 706; *Schroeder v. California Yukon Trading Co.,* 95 Fed. 296; *Brennan v. Clark,* 29 Neb. 385, 45 N. W. 472; *DeGraff v. Wickham,* 89 Iowa, 720, 52 N. W. 503, 57 N. W. 420.)

Equity will not relieve against liquidated damages. (*Nilson v. Towns of Jonesboro,* 57 Ark. 168, 20 S. W. 1093; *Peekskill S. C. & M. R. Co. v. Village of Peekskill,* 21 App. Div. 94, 47 N. Y. Supp. 305; *Everett Land Co. v. Maney,* 16 Wash. 552, 48 Pac. 243; *Pogue v. Kaweah Power & W. Co.,* 138 Cal. 664, 72 Pac. 144; 1 Pomeroy, Eq. Jur., 440; *Morre v. Durnam,* 63 N. J. Eq. 96, 51 Atl. 449; *Grigg v. Landris,* 21 N. J. Eq. 494.)

Equity will decree specific performance in such a case. (*Pogue v. Kaweah, P. & W. Co., supra; People v. Love,* 19 Cal. 677.)

Equity having obtained full jurisdiction will grant any relief proper. (21 C. J. 579, par. 858; *Dover Lumber Co. v. Case,* 31 Ida. 276, 170 Pac. 108; *Lawrence v. Halverson,* 41 Wash. 534, 83 Pac. 889; *Mathieson Alkali Works v. Virginia Banner Coal Co.,* 140 Va. 89, 124 S. E. 470; *Murray v. Speed* (Okl.), 153 Pac. 187; *Templeton v. Bockler,* 73 Or. 494, 144 Pac. 405; *Ely v. Johnson,* 114 Va. 31, 75 S. E. 748.)

Ed. S. Elder and Frank L. Moore, for Respondents.

Where the evidence is conflicting and there is substantial evidence to support a finding, it will not be disturbed on

41 Idaho—50

appeal. (*Bedal v. Smith,* 36 Ida. 797, 214 Pac. 213, and cases cited.)

Where a contract for the performance of an act makes time of the essence of the contract, failure of the obligor to perform within the time specified does not of itself operate as a forfeiture. There must be affirmative action on the part of the obligee. (*Durant v. Comegys,* 3 Ida. 204, 28 Pac. 425; *Haas v. Coburn,* 22 Ida. 27, 124 Pac. 476; *Pease v. Teller Corp., Ltd.,* 22 Ida. 807, 128 Pac. 981.)

Where the entire facts are presented to the court in an action to enforce the specific performance of a contract, the rights of parties to the contract should not be adjudged upon technical or narrow questions, or consideration so as to do injustice to the parties to the contract, but the court should give full consideration to all the facts and circumstances, and the intention and action of the parties, and give such judgment as will be just and equitable to the parties thereto. (*Haas v. Coburn, supra; Pease v. Teller Corp., Ltd., supra.*)

BUDGE, J.—Appellant and respondent company on June 28, 1916, entered into a written contract wherein the respondent contracted to build, maintain and operate a flume along Benewah Creek, to be used for the transportation of sawlogs owned by homesteaders in Benewah Valley. We shall not repeat the contract *in haec verba* in this opinion but will refer to such parts thereof as we deem material.

It was provided in the contract that the respondent company was to build, construct and operate a flume from the St. Joe River, near the mouth of Benewah Creek, to the Hamely Ranch, at which place a dam was to be constructed to furnish a water supply and also to create a reservoir into which the logs hauled from timber lands might be unloaded. The terminus of the flume was to be in the St. Joe River, in order that the logs might be floated down into Coeur d'Alene Lake and caught in what is known as a sorting gap, there to be so handled that they could be sold to mill owners operating in that section of the state. It was stipulated in the contract that the flume was to be built in sections having lakes for storage purposes along the flume at distances not

exceeding two miles. The flume was to be completed and in operation on or before the first day of May, 1917, and when completed the sides of the flume should have been at least five and one-half feet high. It was also provided that logs should be received from owners and transported without discrimination for $1 per thousand feet. The contract contained the further provision that it should be liberally construed in favor of the appellant.

Appellant was the owner of a right to the use of water in Benewah Creek, and some work had been done by it on the stream for the purpose of putting it in such condition that the logs of homesteaders might be floated down the same during the high-water season, a limited use of the creek having already been made for that purpose. The water right and the use thereof was by written lease transferred to respondent company by appellant upon condition that the flume be constructed and operated according to the terms of the contract and upon payment of $250 as an annual rental therefor.

In appellant's complaint, among other things, it is alleged that respondent company failed to carry out the terms of the contract, setting out wherein and in what manner the contract was breached. It further alleged the giving and serving of notice, as in the contract provided for, that the respondent complete the contract according to its terms, and further contained notice of a declaration of forfeiture by reason of the alleged failure on the part of respondent to fulfill the provisions of the contract, appellant's right to forfeit the same due to noncompliance, a declaration of forfeiture and a demand for possession. Appellant further prayed that an injunction issue, restraining and enjoining respondents from molesting, interfering or attempting to interfere with appellant in the enjoyment of the flume and appurtenances and that the respondent company be required by proper decree, to make, execute and deliver to appellant a good and sufficient bill of sale transferring title to the flume and its appurtenances to appellant, and further that appellant have such other and further relief as the court may deem just and equitable.

Respondent company answered specifically denying each and all of the material allegations of the complaint except those allegations alleging corporate capacity of appellant, and as and for a separate defense, alleged its own corporate capacity, the making and entering into of the contract, substantially as set forth in appellant's complaint, and further stating facts and circumstances leading up to the making of the contract, the construction of the flume to its present terminus, the cost of construction thereof in the sum of $86,534.15, the operation of the flume for the period of time that it could be operated conditional upon the water supply, the extension of time granted by appellant beyond the time fixed for the completion of the flume, payment of the rental for the use of the water right and a tender into court of the rental not paid, a failure to complete and operate the flume as provided in the contract by reason of labor troubles and other conditions, together with other matters in the nature of a defense not necessary to be set out herein. Respondent also prayed that an injunction issue enjoining and restraining appellant, its assigns, agents or employees from in any way interfering with the use of the water of Benewah Creek for the purpose of transporting logs and other timber products in and through said flume to said Benewah Lake.

The cause came on for trial before the Honorable Edgar C. Steele, Judge of the Second Judicial District, acting for and in the place of one of the judges of the Eighth Judicial District, and having been finally submitted, the court made its findings of fact and conclusions of law and entered its judgment dismissing plaintiff's cause of action. From the judgment so entered this appeal is prosecuted.

Appellant relies on seventeen assignments of error, eleven of which attack the insufficiency of the evidence to support the findings of fact, five are directed against the conclusions of law upon the grounds that they are not justified by the findings of fact, and one is predicated upon the insufficiency of the findings of fact and conclusions of law to support the judgment. We shall not undertake to discuss each and all of the assignments of error but only such as we deem controlling. We will first dispose of certain of the assignments

of error predicated upon the insufficiency of the evidence to support the court's findings of fact.

In finding No. 8, complained of by appellant, the court found that on May 19, 1918, a number of people entered upon the premises where the flume is situated and completed the upper section thereof and started the operation of said upper section. That such parties were not acting in the interest of or for the appellant herein, that appellant did not go on the ground upon which the flume is located or finish the lower end of the upper section or otherwise act, aid or cause logs to be run out or down the flume and that appellant never has or in any way, manner or form, been in or had possession of said flume or any portion thereof. The record discloses that on the date above mentioned, a number of people, who either had logs at different points along the flume, or were settlers who were interested as friends of the owners of such logs, went upon the flume and completed a small portion of the upper section which was necessary in order to put the flume in condition that it might be operated. There were at least two of the directors of the appellant corporation present and active in the completion of the flume. These settlers started operations and some logs were transported down the flume. The respondent Herrick and some of the employees of respondents resisted the right of the settlers to operate the flume. After some controversy, not to be commended, on the part of respondents, the settlers refrained from operating the flume and further operation of the same was taken over by respondents. The particular point of attack against the finding is that appellant contends it is unsupported by the evidence in this, that the evidence warranted a finding that on this date appellant took over the flume, as it had a right to do under the terms of the contract, and was lawfully in possession and entitled to possession thereof. Possession by the settlers was not possession by the appellant corporation and its own testimony would not warrant a finding by the court that it was in possession of the flume on May 19, 1918, or entitled to possession on that date. The mere fact that two or more of its directors were present and that their being there met

with the approval of its president would not justify a finding such as that contended for.

The court found, in its finding of fact No. 10, "That the defendants did attempt to and did prevent the said parties undertaking to operate said flume on the nineteenth day of May, 1918, from operating the same, but did not do so to compel the settlers or all owners or any owners of timber along or adjacent to said Benewah Creek to sell their timber to the said Milwaukee Lumber Company, at any price whatever." We are satisfied that the evidence supports that portion of the finding that the settlers did not operate the flume, except for a short time on May 19, 1918. The evidence does not support that portion of the finding to the effect that respondents did not refuse to operate the flume on May 19, 1918, and prior thereto, in order to compel the owners of timber adjacent to Benewah Creek, to sell their timber at any price to respondents. From the testimony it is apparent that respondents refused to operate the flume until such time as the owners of timber agreed to accept a price to be fixed by it for their timber.

Appellant attacks finding No. 11, wherein the court found that respondents, acting jointly or severally, never at any time failed, neglected or refused to accept logs for transportation at the price fixed in the contract, or at any time failed to operate the flume as provided in the contract, so that logs could not be floated out or down the flume, nor did the respondents at any time attempt to use the flume or water of the creek to bottle up the timber and prevent its coming to market. This finding is not supported by the evidence. The contract provided that there should be no discrimination but all persons offering logs for transportation by means of the flume were to have equal rights in its use and the price to be charged was to be uniform. Respondent company agreed to transport logs and timber products of all owners, regardless of said ownership. The evidence fully supports appellant's contention that from the beginning, the contract was breached in this respect. It is conclusively shown by the evidence that respondent drove its own logs first; that it refused to transport logs of other

owners; that it offered a sum less than the market price to settlers for their logs; that its attitude was such that other mill owners ceased to buy logs in that vicinity. Also that mill owners who had theretofore purchased logs were compelled to resort to the court for relief in order to bring about the transportation of those logs theretofore purchased by them. The importance of the situation becomes apparent when it is understood that the time during which logs may be transported is limited during each season, depending upon the water supply. Failure in the transportation of timber products results in great damage to the owners, provided they are not transported during the season of high water but are permitted to lie over until the following season. They not only deteriorate in value but there is a corresponding loss in the investment.

Appellant particularly complains of that portion of finding No. 13, wherein the court found that it was impracticable to continue construction of the flume from its present terminus at the mouth of Benewah Creek on to the St. Joe River, for the reason that there is not sufficient current in Benewah Creek to operate the flume if it were extended. It is insisted that the court attempted by this part of its finding to change, vary and modify the terms of the contract and to make a new contract without justification or excuse. The contract provides for the building of the flume down Benewah Creek to the St. Joe River. The flume was not built from Benewah Lake to the St. Joe River, but was so constructed that its terminus was in Benewah Lake into which Benewah Creek empties. The Chicago, Milwaukee & St. Paul Railroad crosses Benewah Lake but there is a trestle in its track through which logs may pass and during the high water season be carried down into the St. Joe River and into the sorting gap, thence into Coeur d'Alene Lake and ultimately to the mills. Now, it would seem that from the evidence the construction of that portion of the flume from Benewah Lake to the St. Joe River is impracticable and would have resulted in useless expense without corresponding benefit. There is evidence that this difficulty might have been overcome by constructing the flume from a higher point

on Benewah Creek. Since, however, the logs may reach the mills through Benewah Lake it would mean at most additional expense, and there is sufficient evidence to justify the court's finding that the failure of respondent company to complete this particular portion of the flume would not warrant a forfeiture of its property or its right to the use of the water held under lease. (*Hagar v. Buck*, 44 Vt. 285, 8 Am. Rep. 368.)

Coming now to finding of fact No. 14, and to that particular portion which has reference to the acts and conduct of one Grotte, placed in charge of the flume and its operation by an order of the district court, wherein the court found that the respondents during the incumbency of Grotte did not have the control, management or operation of the flume in any way, manner, or form other than paying the expenses of operating same under the persons appointed and selected by the court. Grotte had been an employee of respondent company and we think that we are justified in drawing the inference that he was prejudiced in its behalf, that he was primarily interested in getting out respondents' logs before any other logs moved down the flume. That he discriminated in favor of respondents and showed them marked partiality, and that his conduct was influenced by reason of his relationship with respondent, whereby it did have in effect the control, management and operation of the flume, except possibility as against specific orders of the court directing that logs of other mill owners be transported.

In its finding of fact No. 15, complained of, the court found that the flume as constructed for all practical purposes complies with terms and conditions imposed by the contract and that appellant has in no way, manner or form suffered injury or damage by any act or conduct of the respondents in the manner of the construction or operation of the flume. This finding is not supported by the evidence.

The contract contains two forfeiture clauses, in substance as follows:

"The lease of said water right and the right to use said water is conditional upon the fulfillment of this contract by the Milwaukee Lumber Company, and if it does

not perform the obligation herein incumbent upon it to perform, the party of the second part, may cancel this contract, deprive the Milwaukee Lumber Company of the use of said water and said second party may at its option remove all obstructions from Benewah Creek, which would or does obstruct the flow of logs down said creek or interfere with the navigation of said creek, and for such purposes said party of the second part may at its option, remove the parts of the flume that obstruct the creek, if any there are, and may remove all obstructions.''

"It is also agreed that in case said Milwaukee Lumber Company does not perform the conditions of this contract, that in addition to the foregoing option given to the party of the second part, it may also, at its option, require the said Milwaukee Lumber Company to give, and said Milwaukee Lumber Company shall give, upon demand, a good and sufficient bill of sale of said flume, and all or any parts thereof to the party of the second part, and shall assign all right of ways for said flume to the party of the second part, upon demand therefor.''

As will be observed the contract contains certain provisions as to the time for completion of the flume, its length and size, the method and manner of operating the same, that there should be no discrimination as against owners of logs in the matter of transportation, the compensation that the respondent company was to receive for the transportation of timber products and the stipulation for forfeiture upon default in any of the provisions of the contract. An examination of the forfeiture clause discloses that it provides in case of default that the respondent will convey by a good and sufficient bill of sale and deliver over to appellant the flume and appurtenances. Appellant takes the position that having established a breach of the contract in its material parts and damages suffered thereby, it was entitled to a judgment requiring respondents to execute to it, proper demand having been made, a good and sufficient bill of sale of the flume and its appurtenances and that it be placed in possession thereof and that the respondents be perpetually

enjoined from exercising any ownership and control thereover.

From the pleadings and a considerable portion of the evidence submitted on behalf of appellant, we think it is fair to assume that a forfeiture of the entire property was sought. However, appellant contends that it did not rely upon a forfeiture but based its right to be adjudged the owner of the property upon the theory that since the damages were unascertainable and not subject to computation, that the property be awarded to it as liquidated damages.

Appellant's position would be correct if the damages are not measurable, but if ascertainable by any exact pecuniary standard appellant's theory cannot be upheld. The same would be true if certain acts contracted to be performed which are not measurable and other acts which are measurable are both contained in the same contract. We think the principle of law is correctly stated in Pomeroy's Equity Jurisprudence, vol. 1, sec. 443, which says;

"Where the agreement contains provisions for the performance or nonperformance of acts which are not measurable by any exact pecuniary standard, and also of one or more other acts in respect of which the damages are easily ascertainable by a jury, and a certain sum is stipulated to be paid upon a violation of any or all of these provisions, such sum must be taken to be a penalty."

As we have heretofore pointed out, the contract contains provisions for the performance and nonperformance of acts such as a failure to build and complete the flume the required height, failure to construct reservoirs at given distances, failure to complete the flume within the time stipulated in the contract or the extension thereof, discrimination and partiality shown against owners of timber products and in favor of respondents, some of which violations constitute damages that are measurable and others damages which are not ascertainable. In such circumstances the contract will not be construed as providing for liquidated damages but for a penalty.

There is another rule of law applicable to the facts in the case at bar. If the provisions in the contract prescribe a

sum far in excess of the damages sustained, whatever it may be called, either a penalty, forfeiture or liquidated damages, and the contract discloses that its provisions are harsh, oppressive or unconscionable, a court of equity will not enforce it literally but will construe the contract as providing for a penalty and relief will be awarded to the injured party by a mandatory injunction.

Where a party has contracted to do a certain act or to refrain from doing a certain act and has made himself liable to a penalty for the purpose of insuring performance or nonperformance, a court of equity will, if the contract is otherwise one which calls for its interposition, compel such party to specifically perform, or restrain him from committing the act, as the case may be, notwithstanding the penalty prescribed.

It must be conceded that the terms of the contract have been violated. We are, however, of the opinion that the damages sustained are capable of ascertainment, except wherein respondent company failed and refused to transport the timber products offered for transportation without discrimination and its conduct in preventing other mill owners to freely purchase logs in the Benewah Valley, and in bottling up the market in an effort to compel owners of timber products to accept a price less than the going market price for their logs and timber products.

There is evidence that the value of the property sought to be taken by appellant is in the neighborhood of $86,000. The trial court during the examination of the respondent Herrick who was permitted to testify as to the value of the property, made the statement that the cost of the flume was "not the crucial point in the case," and that he did "not think it would make very much difference whether it was sixty thousand or eighty thousand or eighty-six," to which appellant's counsel replied, "I really don't believe it is," whereupon the court stated, "It is just a question of something approximate between forty or eighty-six thousand so far as the court is concerned . . . . "; to which counsel for appellant replied, "Very well, with that understanding,

with that statement that that will not be weighed by the court, the cost of it.''

The trial court did not refuse to permit evidence to be introduced as to the approximate value of the property but suggested that there was no necessity of going further than showing the approximate cost, the court making the remark that, ''The approximate cost is all that is necessary.'' Appellant was not denied the right to cross-examine the respondent Herrick, touching the value of the property or from putting in testimony to show its approximate value but took no exception to the ruling of the court. Irrespective of the finding by the court that the cost of the flume was approximately $86,000, we know as a matter of common knowledge that the construction of a flume in a mountainous country, eight miles in length, is far in excess of the value of the use of a water right, the annual rental of which is $250.

The only consideration moving to respondents was the lease of a water right for which they were to pay a stipulated sum per annum and a forbearance on the part of appellant to further prosecute work upon the stream to the end that logs may be more readily transported.

Since the relief sought is far in excess of the consideration moving to respondent company, to enforce the contract literally would require it to pay in value in property, a sum far in excess of the damages suffered. Such being the situation a court of equity will require a specific performance of the contract and refuse to construe it as one providing for liquidated damages.

The rule would seem to be quite general that equitable relief for the specific performance of a contract is not a matter of strict right but rests in the sound discretion of the court, to be judicially exercised in view of all the circumstances surrounding the matters in controversy, the language employed in the contract, the intention of the parties and whether or not the damages sustained are ascertainable in whole or in part and if relief may be afforded by mandatory injunction. (*Vincent v. Larson*, 1 Ida. 241; *Cooper v. Pena*, 21 Cal. 404; *Young v. Daniels*, 2 Iowa, 126, 63 Am.

Dec. 477; *Fish v. Leser*, 69 Ill. 394; *McCabe v. Crosier*, 69 Ill. 501; *Hoyt v. Tuxberry*, 70 Ill. 331; *King v. Hamilton*, 29 U. S. 311, 7 L. ed. 869; *Henessey v. Woolworth*, 128 U. S. 438, 500, 9 Sup. Ct. 109, 32 L. ed. 500; *Bell v. Scranton Coal Mines Co.*, 59 Wash. 659, 110 Pac. 628.)

Appellant corporation in its brief makes the following statement; that it would be immaterial to it, "whether it got the flume . . . . or whether, the actual possession of the flume was left to respondent with a mandatory injunction requiring it, its agents, employees and servants to carry out its terms."

And since under the prayer of the complaint the latter relief may be granted, we are inclined to the view that under the pleadings and evidence in this case such mandatory relief should be granted.

We are satisfied from our examination of the pleadings and evidence in the case at bar that the trial court did not err in holding that appellant was not entitled to a judgment for liquidated damages, but we are of the opinion that the court should have awarded appellant a mandatory injunction requiring respondents to carry out the terms of the contract by operating the flume whenever there is sufficient water available, or can be made available, and to accept and transport all timber and timber products offered for transportation, without discrimination or preference in any manner whatsoever, and to maintain the flume in such condition that all timber products may be transported to the maximum capacity of the flume at no greater price than that fixed in the contract. Respondents to be further enjoined from in any manner interfering with the free and open market for the sale of timber products within the Benewah Valley.

The judgment is reversed and the cause remanded, with directions to the trial court to enter judgment in accordance with the views herein. Costs are awarded to appellant.

William A. Lee, C. J., and Wm. E. Lee, J., concur.

TAYLOR, J., Concurring Specially.—I concur in the result. The main opinion can be justified in granting relief which appellant has expressed a willingness to accept. I

find myself in the minority in my opinion that the relief granted should be a delivery of the property to the appellant.

The importance attached to a finding that the flume cost $86,000 is not well grounded. The record shows the trial court declared it "not the crucial point in the case." Nor do I think it was, although the opinion makes it such. In view of the evidence that there were 200,000,000 feet, or more, of timber in the territory expected to be served by the flume, and capable of being brought out through it, the cost, in proportion to the intended use, fades into a fraction of a dollar per thousand feet, and the investment, as a whole, loses the vast proportions assigned to it in relation to the whole object of the contract. The contract provides that it shall "be liberally construed in favor of the party of the second part (appellant)." I think the construction given is to the contrary. The whole record shows a wilful, intentional and continued default by respondents.

"Forfeiture will be enforced generally where the default is intentional and continued. One cannot ask equity to relieve him against his own wrong." (5 Pomeroy's Equity Jurisprudence, 4th ed., p. 5000.)

I think the decision should enforce the contract, and give the property to appellant as liquidated damages. (*Pogue v. Kaweah Power & Water Co.*, 138 Cal. 664, 72 Pac. 144.)

I am authorized to state that Mr. Justice Givens concurs in this opinion, except for the first two sentences thereof.