272 P.2d 1020

GRAVES   v.   CUPIC et al.

No. 8034.

Supreme Court of Idaho.

July 20, 1954.

Fred F. Kondo, Priest River, Stephen Bistline, Sandpoint, for appellant.

McNaughton & Sanderson, Coeur d' Alene, Bandelin, Bandelin & Ponack, Sandpoint, for respondents.

TAYLOR, Justice.

On November 3, 1952, the plaintiff and one H. O. Johnson entered into a contract to purchase from the defendants certain real and personal property in Bonner County for the sum of $50,000. Three thousand dollars earnest money was paid on the date of the agreement. Eleven thousand five

hundred dollars was to be paid on or before December 1, 1952, and the balance in monthly installments. The property consisted of a small tract of land, together with the buildings thereon, furniture and fixtures, and the business known as the "Ron-D-Voo Club", where the selling of beer, liquor and food, and the operation of slot machines, was being conducted by the defendants. The contract of November 3rd provided for possession by the purchasers on December 1, 1952, when the further payment of $11,500 was due. Johnson, having no money or assets, the $3,000 was paid by the plaintiff. Sometime in the latter part of November, Johnson and plaintiff disagreed and Johnson withdrew. Plaintiff then asked defendants to rescind the contract and repay the $3,000 to her. This defendants refused. On December 4th a new contract was entered into by the parties by which plaintiff alone agreed to purchase the property for the same price and upon the same terms as previously agreed. The $3,000, paid upon the first contract, and $11,500 additional, paid upon the execution of the new contract, constituted the down payment of $14,500. The balance was to be paid $400 on the 4th day of each month thereafter, beginning January 4, 1953, with interest at 6% per annum. The contract provided for possession on the date thereof, but no formal delivery of possession ever actually occurred. The facts are, defendants offered possession on December 4th, but plaintiff advised them she would not be ready until Monday, December 8th. To this defendants agreed. On Sunday, December 7th, she brought a cook to the place and arranged with defendant John Cupic for a place for him to sleep on the premises. John Cupic had been living upstairs in the club building, and was there on the 7th, 8th and 9th. He testified that he delivered the keys to his own attorney at Newport, Washington, on December 9th. This attorney testified he delivered the keys to plaintiff's attorney, Fred F. Kondo.

On December 8th the plaintiff went to Sandpoint to apply for retail license. The county commissioners, on learning she had been a resident of Alaska, and had been and was a nonresident of the state of Idaho, informed her she was ineligible for such a license and advised her to see a lawyer. On December 12, 1952, she commenced this action for cancellation of the contract and recovery of the down payment. She alleges that at the time of the negotiations and making of the contracts she was mentally incompetent as a result of shock and anguish arising out of the suicide of her husband, which occurred at Ketchikan, Alaska, October 9, 1952. Prior to that time plaintiff and her husband had been living at Ketchikan and operating a tavern there. H. O. Johnson had been employed by them as bartender. She alleges that after her husband's death, Johnson purported to befriend her in her bereavement, counseled her to purchase another tavern

and accompanied her on a tour of north Idaho looking for such an opportunity; that she fell under his influence and, being incompetent and acting upon his advice, she entered into the contract of November 3rd. Plaintiff further alleges that the defendants fraudulently represented to her that she could acquire the necessary liquor and beer retail licenses, and operate the business, knowing that because of her non-residence she could not qualify for such licenses and that she could not lawfully operate the business; that such representations were made falsely and for the purpose of inducing her to enter into the contract; and that she did so in reliance thereon. She also alleges that, through her attorney-in-fact, Kondo, she took possession of the property and retains possession as security for the repayment of the $14,500.

Plaintiff made no further payments upon the contract and on March 10, 1953, the defendants filed their answer and cross-complaint. In their cross-complaint they allege the default of the plaintiff in failing to make the payments falling due on the 4th days of January, February and March, 1953; and based thereon, defendants, by their cross-complaint, declare a forfeiture and cancellation of the agreement. They allege the value of the rents and profits to be $1,000 per month and pray for cancellation of the contract; possession of the property; the money paid on the contract as liquidated damages; $3,000 damages for the loss of rents and profits for the months of January, February and March; and damages at the rate of $1,000 per month thereafter until possession is restored to them.

The cause was tried to the court in equity. Judgment was entered in favor of the defendants on the 31st day of March, 1953, for the cancellation of the contract, possession of the property, and the retention of the payments made thereon as liquidated damages.

On the issue of plaintiff's competency, considerable evidence was introduced on both sides, including testimony of medical, neurological, and psychiatric experts. From this it appears that following the sudden death of her husband and the shocking nature thereof, the plaintiff suffered a severe reactive depression. The experts disagree as to whether her experiences rendered her incompetent to transact business. However, it appears from the entire record that she understood what she was doing and was not incompetent in a legal sense. The court so found, and its finding is conclusive of this issue.

On the issue of fraud, although somewhat conflicting, there is ample evidence to support the court's finding that the defendants did not fraudulently represent to the plaintiff that she could obtain beer and liquor retail licenses. The evidence is to the effect, she was told by the defendants and others that a year's residence in Idaho was a qualification required by the law for

such licenses. However, defendant John Cupic testified that he told plaintiff she could operate the business under the licenses held by defendants until the end of December, and in the meantime, by incorporating the business, or employing a bartender who could qualify, she could in that way obtain licenses to carry on thereafter.

The Cupic brothers had been residents of Idaho for some years and had owned and operated the Albeni Falls Club, a short distance from the Ron-D-Voo, before they acquired the Ron-D-Voo Club, and they were the holders of retail liquor and beer licenses. It must, therefore, be presumed that they were familiar with the laws of this state relating to the issuance of such licenses, and the qualifications of licensees. They were dealing with a party whom they knew had been a resident of Alaska, a nonresident of Idaho, and unfamiliar with the licensing requirements. If the other elements of fraud had been established, the relationship of these parties was such as to entitle the plaintiff to relief on that ground, even though the misrepresentations charged were representations of law. 37 C.J.S., Fraud, § 55; 23 Am.Jur., Fraud and Deceit, §§ 48 and 49. However, deeming it unnecessary, we do not consider further the question of fraud. It is sufficient here to say that John Cupic, in making the representations or suggestions, which he says he did make, put himself in the position of representing to plaintiff that she could carry on the business in violation of the law, and of encouraging her to do so. §§ 23–910, 23–1010, I.C. Such conduct does not commend defendants' cause to a court of equity.

■ The ultimate and decisive question is as to whether, under the circumstances, the defendants are entitled to forfeit the money paid on the contract. "Equity abhors forfeitures." Stringer v. Swanstrum, 66 Idaho 752, 168 P.2d 826, 830. "Equity will not grant specific performance of a forfeiture unless the failure to do so would lead to an unconscionable result." Sullivan v. Burcaw, 35 Idaho 755, 208 P. 841. The contract provision, here involved, makes time the essence of the agreement, and in case of purchaser's default, "any payments theretofore made hereunder by the purchaser shall be retained by the seller in liquidation of damages sustained by reason of such failure." Generally speaking, parties to a contract may agree upon liquidated damages in anticipation of a breach, in any case where the circumstances are such that accurate determination of the damages would be difficult or impossible, and provided that the liquidated damages fixed by the contract bear a reasonable relation to actual damages. But, where the forfeiture or damage fixed by the contract is arbitrary and bears no reasonable relation to the anticipated damage, and is exorbitant and unconscionable, it is regarded as a "penalty", and the contractual provision therefor is void and unenforceable. The applicable principle is

457

set out in 1 Restatement of the Law, Contracts, § 339, as follows:

"Liquidated Damages and Penalties.

"(1) An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

"(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

"(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation."

The question was posed by the supreme court of Utah in a similar case as follows:

"The vital question to be determined is: What is the correct measure of damages in a case of this kind? Shall we apply the rule of compensatory damages, or is it a case in which punitive damages should be allowed? Upon what principle can punitive damages or damages in excess of compensation for the injury done be justified in the case at bar? These are questions that appeal both to the judgment and conscience of the court." Malmberg v. Baugh, 62 Utah 331, 218 P. 975, 978.

In Perkins v. Spencer, 243 P.2d 446 at page 449, the Utah court, quoting from an earlier case, Bramwell Inv. Co. v. Uggla, 81 Utah 85, 16 P.2d 913, said:

"'* * * This court is committed to the doctrine, that where the parties to a contract stipulate the amount of liquidated damages that shall be paid in case of a breach, such stipulation is, as a general rule, enforceable, if the amount stipulated is not disproportionate to the damages actually sustained.'"

The court then held the provision in the contract before it for the forfeiture of the down payment of $2,500 on sale of realty for $10,500, even though claimed as "liquidated damages", was a penalty and unenforceable. Other Utah cases are: Bramwell Inv. Co. v. Uggla, 81 Utah 85, 16 P.2d 913; Croft v. Jensen, 86 Utah 13, 40 P.2d 198.

In Mid-Continent Life Ins. Co. v. Goforth, 193 Okl. 314, 143 P.2d 154, at page 159, the Oklahoma court, applying the rule, said:

"Where it is doubtful whether a provision should be deemed a penalty or liquidated damages, the courts incline to regard it as a penalty, for by so doing the recovery can be apportioned to the actual damages or the loss actually sustained. Sonken-Galambra Corp. v. Abels, 185 Okl. 645, 95 P.2d 601. The fact that the parties to a contract call a sum stipulated to be paid in case of its breach 'liquidated

458

damages' is by no means controlling or conclusive. Such contracts may be and often are held to provide for a penalty. 15 Am.Jur., Damages, par. 246, p. 677. The question whether the amount stipulated to be paid upon failure of performance is to be treated as liquidated damages, or as a penalty, is, in its last analysis, a question of law for the court, to be determined from the language and subject matter of the contract, the evident intent of the parties, and all the facts and circumstances under which the contract was made."

In Major-Blakeney Corp. v. Jenkins, 121 Cal.App.2d 325, 263 P.2d 655, the California district court of appeal, after holding that the vendors were justified in terminating the purchaser's rights under an escrow contract, where time was of the essence, for the failure of the purchaser to deposit the balance due on the day fixed by the contract, went on to hold that the provision for retention by the vendor of the down payment amounting to approximately 30% of the purchase price, could not be enforced as a valid provision for liquidated damages. The supreme court of California has likewise applied the rule. Freedman v. Rector etc., 37 Cal.2d 16, 230 P.2d 629, 31 A.L.R.2d 1; Better Food Markets v. American Dist. Tel. Co., 40 Cal.2d 179, 253 P.2d 10. California and Oklahoma have applicable statutes. But it appears that these statutes are substantially codifications of the rules applied in other jurisdictions, and as stated by the American Law Institute in 1 Contracts, § 339, supra. The California court in the two cases cited recognizes the applicability of the general principles involved. See also Myers v. Garaventa, 93 Cal.App.2d 428, 209 P.2d 135; Hill v. Hearron, 113 Cal.App.2d 763, 249 P.2d 54; Ricker v. Rombough, 120 Cal.App.2d Supp. 912, 261 P.2d 328.

In Freedman v. Rector, supra, the court refers to a statute of that state in effect limiting the allowance of exemplary damages for the breach of an obligation not arising from contract, to cases where the defendant has been guilty of oppression, fraud or malice, as expressing the policy of the law against the allowance of exemplary damages for breach of contract. While we do not have a similar statute, it has long been recognized as the law in this jurisdiction that exemplary or punitive damages, though for a tort and not mere breach of contract, will not be allowed except where the action of the wrongdoer is "wanton, malicious, or gross and outrageous, or where the facts are such as to imply malice and oppression," or where attended "by circumstances of willful fraud, malice, or gross negligence." Unfried v. Libert, 20 Idaho 708, 119 P. 885, 891; Gunnell v. Largilliere Co., 46 Idaho 551, 269 P. 412; Klam v. Koppel, 63 Idaho 171, 118 P.2d 729; Harrington v. Hadden, 69 Idaho 22, 202

P.2d 236. This would seem to establish the policy of the law in this state against the allowance of punitive damages for breach of contract, in the absence of fraud, malice, oppression or other sufficient reason.

In the case before us there was no evidence of oppression, fraud, or malice on the part of the plaintiff, nor any evidence of gross negligence. On the contrary, she was apparently acting in good faith, and she may have been misled by the misrepresentations of the defendants as to the law.

This court has previously recognized the distinction to be drawn between liquidated damages and a penalty. Weiser River Fruit Ass'n v. Feltham, 31 Idaho 633 (on rehearing page 639), 175 P. 583; Benewah Creek Improvement, Land & Logging Co. v. Milwaukie Land Co., 41 Idaho 783, 242 P. 793; Donaldson v. Josephson, 71 Idaho 207, 228 P.2d 941; Williamson v. Smith, 74 Idaho 79, 256 P.2d 784.

In Koch v. Glenn, 53 Idaho 761, 27 P.2d 870, the court allowed the damages provided for in the contract, the retention by the vendors of payments made. But, in that case the damage stipulated for was reasonable in relation to the actual damage occasioned by the breach, and was, therefore, not a penalty.

In State ex rel. Robins v. Clinger, 72 Idaho 222, 238 P.2d 1145, we held the measure of damages for breach of a contract for the sale of realty to be the difference between the contract price and the market value of the property at the time of the breach, unless by the contract the parties had stipulated otherwise. No possession or rental value was there involved. Generally where the defaulting purchaser has had possession of the property the damage due the vendor is enhanced by the rental value during such occupation. Nelson v. Hoff, 70 Idaho 354, 218 P.2d 345; Williamson v. Smith, 74 Idaho 79, 256 P.2d 784.

Here the damages stipulated for by the parties is clearly unconscionable, and exorbitant. It is arbitrary and bears no reasonable relation to the damages which the parties could have anticipated from the breach which occurred. Hence, the provision is for a penalty and is unenforceable. In such a situation the damages allowable are those which the law provides for breach of the contract as though no such provision had been inserted therein. Perkins v. Spencer, Utah, 243 P.2d 446. There is no proof of any depreciation in the value of the property between the making of the contract on December 4th and the time it was abandoned by the plaintiff upon the commencement of this action December 12th, and it is hardly possible that any depreciation could have occurred in that time. However, the plaintiff did occasion damage to the defendants by retaining possession during December, January, Feb-

460

ruary and March. She claimed the right to hold possession as security for the return of her down payment. This was ill-advised, however, in view of the statute which gives her a purchaser's lien to secure the repayment of any sum found due her; independent of possession, § 45-804, I.C., and no facts were shown to justify such possession. *Sorensen v. La-rue,* 43 Idaho 292, 252 P. 494, Id., 47 Idaho 772, 278 P. 1016.

The court found from the evidence that the value of the use and occupation was $1,000 per month. The parties agreed upon Monday, December 8th, for delivery of possession. Defendants had not been keeping the place open for business on Mondays, and the keys were not turned over until the 9th, if then. So plaintiff is not chargeable with possession before the 9th.

There was some evidence of damage to the property by fire during the period when possession was held by the plaintiff. However, it also appears that this loss was covered by insurance.

The judgment is reversed and the cause is remanded with directions to the trial court to enter judgment in favor of the plaintiff and against the defendants for the sum of $10,758.02 (being the amount paid on the contract less $3,741.98 damages for loss of rents and profits during the time plaintiff withheld possession of the property), with statutory interest on $3,000 thereof from November 1st, and on the balance from December 4, 1952, Sorensen

*v. Larue,* 47 Idaho 772, 278 P. 1016; and providing a lien on the property involved to secure payment of the judgment, and for the foreclosure of such lien.

Costs to appellant.

PORTER, C. J., and GIVENS, THOMAS and KEETON, JJ., concur.