Suit by H.F. Quest against Silar B. Barge and Evannah Barge, husband and *Page 159 
wife, for specific performance of a contract to sell realty. From an adverse decree, the plaintiff appeals.
Decree affirmed.
The vendee plaintiff brought suit for specific performance of a contract to sell property which was defended upon the grounds hereinafter stated. From an adverse decree the vendee appealed.
The record discloses that a real estate agent, Hugh R. Neighbors, was commissioned by J.T. Bevins and J.W. Weaver, co-partners, operating the Harlem Bar, in Pensacola, Florida, to purchase a brick building owned by appellees, Silas B. Barge and his wife, Evannah Barge. This property was in the same block as the Harlem Bar but was not listed for sale at this time and Neighbor's assignment was to persuade Barge to sell the property at a price agreeable to Bevins and Weaver.
When Neighbors approached Barge, he represented that he was in contact with some out-of-town people who desired to purchase property either in Pensacola or Mobile. To induce Barge to make his decision quickly he also represented that these out-of-town people would buy in Mobile if no suitable place were found in Pensacola in a very short time. When questioned by Barge as to the type of business they desired to operate, Neighbors said he heard or thought it was to be a secondhand store. These representations were untrue and were known to be so by Neighbors. After several visits Barge consented to sell his property for $11,000. Thereupon the contract of sale was executed, Neighbors signing as vendee and a check representing earnest money passed to Barge. This check was drawn on the Cabannis Agency, the realtors by whom Neighbors was regularly employed. Within several days after the signing of the contract of sale, appellee Barge learned the identity of the undisclosed principals and refused to be bound by the contract. Some five weeks later Neighbors assigned all his rights and obligations under the contract of sale to H.F. Quest, an employee of Bevins and Weaver, and appellant here.
On the 24th day of June, 1947, Quest filed a bill of complaint for specific performance of the contract of sale.
Appellee Barge successfully defended this suit in the court below, and defends here, on the basis that the misrepresentation of the agent Neighbors rendered the contract voidable at his election. He alleges that had he known the true identity of the vendee he would not have sold the property to them, or at least not for a sum as low as that contracted for.
In order to fully comprehend the merit of appellee's defense, it is necessary to set forth facts which provide a background against which to consider the facts in the negotiations referred to.
The property which is covered by the contract of sale is a brick building in the City of Pensacola. In one part of the building appellee Barge operates a cafe; the remainder is let out to other establishments. The cafe is licensed to sell beer and wines and has a clientele in that business. Appellee Barge has for some time been desirous of selling whiskey on the premises, but has been unable to do so because of an ordinance of the city which prohibits more than one whiskey license to the block. The Harlem Bar, owned and operated by Bevins and Weaver, the real parties in interest to the contract, is in the same block as Barge's cafe and has the only available license to sell whiskey. Barge, Weaver and Bevins are competitors in the beer and wine trade.
For some years prior to the negotiations for the purchase of Barge's property, Weaver and Bevins have rented the premises occupied by the Harlem Bar. Recently, however, landlord trouble developed for them and their rent was more than doubled. As a result, they conceived the idea that it would be to their advantage to purchase their own premises. With this object in mind, Bevins and Weaver commissioned Neighbors to buy Barge's building, and thus the negotiations were begun which resulted in the contract of sale here in litigation. *Page 160 
The facts of the case show that Neighbors acted in the capacity of agent for both these parties to the contract. Bevins and Weaver, through Bevins, commissioned Neighbors to purchase the Barge property for them. They did not want their identity known, and, at some stage of the proceedings directed Neighbors to sign the contract as vendee. They sent Neighbors to Barge knowing, again at some undisclosed stage of the negotiations, that he would become and did become the agent of Barge to sell the property. This fact was known to Bevins and Weaver, for Bevins testified that he understood that Neighbors was to receive the regular realtor's commission for selling Barge's property. Appellee Barge, on the other hand, knew only that Neighbors was in contact with some people who were interested in buying his property. He was led to believe by Neighbors' misrepresentation that they were "out-of-town people." Barge knew nothing of the relations between Neighbors and Bevins and Weaver. There can be little doubt that such limited knowledge of the true status of the agent Neighbors was insufficient to charge Barge with a full knowledge and consent to the double agency.
When Neighbors approached Barge to persuade him to sell the property and expecting to become his agent for such purpose, an expectation that was fulfilled, it was incumbent upon him to make a full disclosure of all the facts of his relation to the vendee. In my opinion, the only alternative to this disclosure was to remain the agent of the vendee only. This principle is well established in the law.
In the American Law Institute's Restatement of Agency the duty of the agent assuming to act as agent for both parties to a transaction is as follows:
"An agent who acts for adverse principals in a transaction is subject to a duty to act with fairness to each, and to discloseto each all facts which he knows or should know would reasonablyaffect the judgment of each in permitting such dual agency,
except as to a principal who has manifested that he knows of such facts or that he does not care to know of them." 2 Agency ALI, Sec. 392. (Italics supplied.)
To illustrate the importance of disclosure, the American Law Institute further states:
"One employed as agent violates no duty to the principal by acting for another party to the transaction if he makes a fulldisclosure of all relevant facts which he knows or should know, or if the principal otherwise knows of them and acquiesces in the agent's conduct. The agent's disclosure must include not only the fact that he is acting on behalf of the other party, but alsofacts which are relevant in enabling the principal to make anintelligent determination, such as the prior relations between the agent and such other party, and the knowledge or lack of knowledge by the other party that the agent is acting for the principal." Ibid. (Italics supplied.)
The position of the American Law Institute requiring disclosure of all material facts by the agent to the principals which he is serving is supported by numerous cases.
In the case of Mueller v. Michels, 184 Wis. 324, 197 N.W. 201, 204, 199 N.W. 380, the Supreme Court of Wisconsin stated:
"* * * (An agent) may also act as agent for both parties for a consideration where the facts with respect to his employment arefairly and fully brought home to each of the parties and where they consent thereto." (Italics supplied.)
Again, in the case of McElroy v. Maxwell, 101 Mo. 294, 14 S.W. 1, 4, the same doctrine was enunciated:
"There may be instances, as the authorities show, where one may be agent of the two contracting parties; but this can occur onlyupon the fullest disclosure by the agent of this fact, and thefullest comprehension of it by those contracting through themedium of such agent." (Italics supplied.)
There are many cases adjudicating the rights of parties under contracts of sale where the agent of one party has assumed to act for both parties and thereby committed a breach of duty to the principal without knowledge of such divided allegiance. The early case of Hesse v. Briant (1856) 6 De Gex, G. M. 623, 5 Week. Rep. 108, involved a solicitor who was given authority to sell property of the vendor. *Page 161 
He subsequently sold the property to another client for whom he had acted as adviser in the past. The only defense by the vendor to an action to specifically enforce the contract was that the solicitor had committed a breach of duty in failing to disclose the vendee's name and the fact that he was solicitor to both parties. The lower court found that no misrepresentation had been made and that the facts undisclosed were trivial and did not injure the vendor in any way. He decreed specific performance of the contract. On appeal Lord Cranworth reversed the judgment, saying:
"Now I don't find that this was ever communicated to Mr. Briant, though it was very important to a man in the defendant's position to know who was likely to become the purchaser, as if he had known that Mr. Hesse was the person, he might have insisted upon his giving a higher price. If then that was not communicated, it would in my opinion upset the whole transaction, because any fact which ought to have been made known, and which was not communicated, would be enough for that purpose * * * Although, therefore, I do not lay it down that an agent cannot act for and bind opposing parties, yet it must appear that the principals were at arms' length in the transaction. * * *"
In Marsh v. Buchan, 1890, 46 N.J. Eq. 595, 22 A. 128, 129, a case very much like the one at bar, the agent of the vendees, appointed to purchase land of the vendor, assumed to act as the agent of the vendor as well. The vendees desired to keep their identity unknown for fear that the vendor would want a higher price from them. Accordingly, the agent was instructed to sign the contract as vendee, as in this case at bar. The agent failed to disclose the identity of the vendee and the reason for their desiring to remain anonymous. In an action by the vendee for specific performance of the contract of sale the vendor defended on the ground that the contract was voidable because of the dual capacity of the agent and his failure to make a full disclosure. The Court of Errors and Appeals affirmed the decree denying specific performance of the contract. As I believe that this case controls the one at bar and is an extremely well reasoned and thorough treatment of the subject, I am taking the liberty of setting it out in part:
"First. That Sleight, having been originally employed by the purchasers, must be considered as primarily their agent, although he afterwards acted, or assumed to act, as the agent for the defendant. This is the rule laid down by Story, Ag. § 31, in reference to those brokers who are for some purposes treated as agent for both parties, and certainly no other rule could safely be applied to real-estate brokers, where the very nature of the employment is such as to imply a reliance on their skill and integrity in the interest of the original employer, and is also such as generally to preclude a subsequent employment in the adverse interest. And in this case it makes no difference whether the original employment by the purchasers was a general employment to purchase, as alleged in the bill, or a special employment to obtain the prices; for, in the obtaining of prices, the broker is interested to obtain the lowest prices from the vendor, and it is his right and duty, by all fair means, to obtain the lowest prices. He also becomes interested in bringing about a sale to his employers, to the exclusion of all other purchasers.
"Second. Being the agent of the purchasers at the time of his application to the defendant, Sleight had no right to accept from her the employment as her agent to sell the property, without a disclosure to her of his agency for the purchasers, and his failure to make this disclosure to the defendant, before she signed the written contract, was, on his part, a fraudulent concealment of a material fact. In some instances of sales and purchases by real-estate brokers, there is no legal or practical impediment to their acting as brokers or agents for both parties, but in such cases it is settled that there must be the fullest disclosure to each of the principals that the broker is acting as agent for both, in order that the principals may deal at arms-length. Otherwise the principal, ignorant of the agency for the other, may question the transaction. Whart. Ag. §§ 244, 366. * * *
"In the present case, I am inclined to think that Sleight was absolutely precluded *Page 162 
from accepting the agency for defendant, because he could not, in justice to his original employers, and with a due regard for their interests and rights, disclose that he was acting for all of these associates, or disclose that he knew of their scheme of purchase and improvement. All the persons interested in the purchase, as appears by the bill and their evidence, considered it of vital importance that their plans should not be disclosed, as this might lead to a rise in prices. They had the undoubted right, I think, by themselves or by their agent, to purchase without making such disclosure; and the mere failure to communicate the scheme to the defendant was no fraud upon her which would entitle her to refuse to perform the contract. But the very fact that the agent of the purchasers knew of the association, and knew something of the scheme, and knew as he must have known, that silence as to the scheme of purchase by the associates was then of importance to the proposed purchasers, made it impossible for him fairly, openly, and in entire good faith to accept an agency from the seller. * * *
"Third. The mere signing of the contract by Sleight as the agent of Marsh, one of the purchasers, did not operate as a disclosure to the defendant of his agency for the purchasers during the negotiations, and at the time the terms were verbally agreed on. The negotiations were conducted, and the terms of sale agreed upon, while Sleight was still acting towards the defendant in the confidential relation of agent; and it is also evident, I think, that, in accepting the terms offered, the defendant was, in fact, influenced by the statements and opinions of Sleight, made to her as his principal, that the price was a fair one, and that he could do no better. And the defendant, before signing a written contract binding herself to carry out the terms verbally agreed on while this confidential relation existed, was entitled, I think, to the full disclosure of the relations of Sleight to the purchasers, which existed during the negotiations, and at the time when the terms were fixed. * * * In view of the relations between Sleight and the defendant previous to and at the time of the contract, it was not, I think, the defendant's duty to suspect and inquire, but it was Sleight's duty to disclose and explain, and the defendant should not be prejudiced by a failure to suspect that Sleight's signature on the contract, as agent for the purchaser, was an indication that he had all along been acting under an adverse appointment.
"Fourth. The fact that the price to be received for the property seems to be a fair one will not, so far as Sleight is concerned, prevent the defendant from setting up his fraudulent concealment to resist specific performance of the contract. The case of Young v. Hughes, 32 N.J. Eq. 372, is direct authority upon this point; Mr. Justice Magie ([32 N.J. Eq.] page 384) declaring the rule to be that the effect of the agent's concealment and neglect of duty in that case did not, so far as the agent was concerned, depend at all upon the question whether or not the neglect was injurious to the principal, and that the rule was one founded on sound policy, not based on meditated fraud or actual injury. It was, as he says, established to prevent the possibility of injury in such cases. The question upon this branch of the case is whether the contract was fairly and openly obtained by Sleight from the defendant, and, if it was not so obtained, it is evidently no defense or answer that the price was fair. * * *
"Fifth. That the complainant and his associates, although innocent of any participation in the fraudulent conduct of their agent Sleight, in effecting the sale and procuring the execution of the contract by the defendant, are not entitled to the specific performance of the contract —
"(1) Because I understand the general rule to be settled in this state, at law as well as in equity, that a contract procured by the fraud of an agent may be rescinded, even as against an innocent principal. The general principle was recognized and acted on by the court of errors and appeals in Keen v. James, Ex'rs, 39 N.J. Eq. 527, [51 Am.Rep. 29]. * * * Mr. Justice Dixon says, [39 N.J. Eq.] page 544, [51 Am.Rep. 29]: `The fraud of the agent affects the principal for the reason that every principal impliedly warrants the integrity of his agent, at least so far as to prevent his retaining the fruits of the fraud, and if the agent, in transacting his employer's business, has unlawfully effectuated a fraudulent *Page 163 
design, it is unimportant whence the elements of his corrupt purposes were derived.' * * * In fact, the doctrine that an innocent principal cannot avail himself of a bargain obtained by the fraud of his agent seems to have been settled since Lord Holt's time, (see Whart. Ag. § 711) and the only question open to dispute in later cases has been whether the principal may also be sued for the deceit of his agent.
"(2) The present case is one where the principal applies for a specific performance of the contract, procured, as I have found, by his agent's fraud. This relief being purely equitable, will be denied, where the situation of the parties requires perfect good faith and openness of dealing in making the contract, and these have not been observed. In Hesse v. Briant, 6 De Gex, M. G. 623, this rule was laid down as applying to a case where a solicitor was acting as agent for both vendor and purchaser, and the court of errors and appeals, in Young v. Hughes, 32 N.J. Eq. 372, 385, approved the rule of this case. In the present case, it seems to me that the defendant, before reposing in Sleight the confidence of employing him as her agent, and before making this contract, had not received that fair, open disclosure of Sleight's relation to the vendors (sic, vendees?) to which she was entitled, and that on this account also the equitable relief of specific performance should be denied."
The opinion in Marsh v. Buchan has the support and sanction of many cases and text writers. Mr. Mecham in his learned treatise on the law of Agency states:
"* * * If my agent enters into your employment without your knowledge of and consent to the double agency, you may repudiate because you were entitled to have a free and unprejudiced agent. Similarly, if your agent enters into my employment without my knowledge of the double relation, I may repudiate." 2 Mechem on Agency (2nd Ed. 1914) Sec. 2139.
It is then the policy of the law to deny the agent and his principal the benefits of a contract executed while the agent has assumed to act for both parties without full knowledge and consent to the relation by the principal sought to be held. This rule rests upon policy and not upon the proof of injury or damage to the principal. Thus, in the early case of Greenwood v. Spring, 1857, 54 Barb, N.Y., 375 the court held:
"A contract made by one individual as the agent of both parties is not void, ([Arnold v. Sandford], 14 Johns [N.Y., 417] 418) but only voidable, at the election of the principal, if he come into court on timely application. (5 Vesey 678, [Hawley v. Cramer], 4 Cowen [N.Y., 717], 718). The rule seems to be founded on the danger of imposition; and such agreements are regarded as constructively fraudulent. ([Van Epps v. Van Epps], 9 Paige, [N.Y., 237], 242). It is not necessary for a party seeking to avoid such a contract to show that any improper advantage has been gained over him; it is at his option to repudiate, or affirm, the contract, irrespective of any proof of actual fraud. ([New York Central Ins. Co. v. National Protection Ins. Co.,14 N.Y. 85], 4 Kern. 91)."
This view, and the reason for it, was reaffirmed by the Court of Appeals in a later case, also analogous to the case at bar, in which the principal sued for an accounting of profits realized from the resale of the property, and for the recovery of the commission paid the broker. The court, speaking through Judge Cardozo, said:
"As broker for the seller, the duty of this fiduciary was to make the terms as favorable to his employer and the price as high as possible. As president and manager of the buyer corporation, its sole representative in the transaction, his duty was just the opposite. * * * We are told that the conflict of interest was sufficiently revealed when the brokers informed the plaintiff that the sale was to be made to client of their office. Disclosure so indefinite and equivocal does not set the agent free to bargain for his own account or for the account of a corporation which acts through him alone. "If dual interests are to be served, the disclosure to be effective must lay bare the truth, without ambiguity or reservation, in all its stark significance (Dunne v. English, LR 18 Eq. 524; Imperial Merc. 
Credit Assn. v. Coleman, LR 6 H.L. 189). Finally, we are told that the brokers acted in good faith, that the terms procured were the best obtainable *Page 164 
at the moment, and that the wrong, if any, was unaccompanied by damage. This is no sufficient answer by a trustee forgetful of his duty. The law `does not stop to inquire whether the contract or transaction was fair or unfair. It stops the inquiry when the relation is disclosed, and sets aside the transaction or refuses to enforce it, at the instance of the party whom the fiduciary undertook to represent, without undertaking to deal with the question of abstract justice in the particular case.' * * * Only by this uncompromising rigidity has the rule of undivided loyalty been maintained against disintegrating erosion." Wendt v. Fischer, 1926, 243 N.Y. 439, 154 N.E. 303, 304.
It is worthy of note in this case that the vendor listed his property for sale at $75,000 and that the brokers voluntarily offered $80,000 for their client and this was accepted by the vendor.
Perhaps the best statement of the law applicable to the inquiry at bar is that found in Evans v. Brown, 1912, 33 Okla. 323,125 P. 469, 470:
"No principle is better settled than that a man cannot be the agent of both the seller and the buyer in the same transaction, without the intelligent consent of both. Loyalty to his trust is the most important duty which the agent owes to his principal. Reliance upon his integrity, fidelity, and ability is the main consideration in the selection of agents; and so careful is the law in guarding this fiduciary relation that it will not allow an agent to act for himself and his principal, nor to act for two principals on opposite sides in the same transaction. In such cases the amount of consideration, the absence of undue advantage, and other like features are wholly immaterial. Nothing will defeat the principal's right of remedy, except his own confirmation, after full knowledge of all the facts. Actual injury is not the principle upon which the law holds such transactions voidable. The chief object of the principle is not to compel restitution where actual fraud has been committed, or unjust advantage gained, but it is to prevent the agent from putting himself in a position in which to be honest must be a strain on him, and to elevate him to a position where he cannot be tempted to betray his principal."
It is evident from all these authorities that in cases of double agency the relief granted to the principal against the agent, or against the third party who has compromised the agent, is not made to depend upon the intention to defraud, the presence of actual misrepresentation or non-disclosure, or the presence of injury.
The law, in the words of Judge Cardozo, "* * * stops the inquiry when the relation is disclosed, and sets aside the transaction or refuses to enforce it * * * without undertaking to deal with the question of abstract justice in the particular case." Wendt v. Fischer, supra.
The decree appealed is affirmed.
ADAMS, C.J., TERRELL, THOMAS, and HOBSON, JJ., and BROWN, Associate Justice, concur.
CHAPMAN, J., dissents.