358 P.2d 855

Melvin M. MELTON and Lena M. Melton, Plaintiffs-Respondents,

v.

Fidele H. AMAR and Barbara Amar, Defendants-Appellants.

No. 8905.

Supreme Court of Idaho.

Jan. 4, 1961.

Affirmed in part, reversed in part, and remanded with directions.

Charles Herndon, Salmon, Ralph Breshears, Boise, for respondents.

Furey & Furey, Salmon, Davison, Davison & Copple, Boise, for appellants.

**McQUADE, Justice.**

This is an action for rescission of a land sale contract. Defendants, in their affirmative defense and counterclaim, seek to avoid specific performance by way of reformation, or, in the alternative, a rescission of the contract and return of the consideration paid by them.

Respondents seek to recover possession of real property known as "Williams Lake Ranch," which is located in Lemhi County, Idaho, it having been sold under installment contract to the appellants. The Williams Lake Ranch property described in the contract of sale is mountainous in character, and was described by legal subdivisions, with no reference to the number of acres. Located thereon are a ranch house by the Salmon River, cabins and cafe at Williams Lake, and other miscellaneous structures built to accommodate fishermen and other guests.

By the contract of November 12, 1957, respondents agreed to sell to appellants the ranch property and personal property situated upon the ranch for the sum of $100,-000. The contract expressly stated that time was of the essence. Appellants paid .$29,000 upon the execution of the contract, and thereafter agreed to pay $10,000 on or before December 16 of the years 1958, 1959, 1960, and 1961, and further agreed to assume a mortgage in the sum of $5,913.12. The contractual balance of $25,086.88 plus interest at the rate of six per cent per annum from December 1, 1957, was to be paid in annual installments of $3,500, commencing December 16, 1962, this balance plus interest to be paid on or before December 16, 1966. No interest was to be paid by the appellants under the contract except interest on the sum of $25,086.88.

Respondents brought this action after appellants made payment of $2,926.50 on January 7, 1959, in lieu of the $10,000 payment due December 16, 1958.

Appellants formerly lived in La Puente, California; they learned the ranch was for sale through a friend in Los Angeles. While on vacation in Idaho during July, 1957, they visited respondent Melton, who showed them the property. Appellants made about four trips to the ranch before signing the contract November 12, 1957. Before the contract was entered into, respondent Melton had represented to appellants that the ranch had an acreage of 900 acres. Appellants assert they bought the ranch not only as a "dude ranch" but also as a cattle ranch; therefore, the total acreage and the acreage of hay land was important to that business.

During the trial, respondent Melton testified that there were 888 acres of deeded

land in the ranch. The contract provided that no "Taylor grazing" or forest area grazing privileges were used in connection with the property. Appellants charge that they had attempted to secure a location of the corners and exterior boundaries of the ranch located through a surveyor, and by artifice the respondents caused the surveyor to abandon the project before it was completed. It was proved that the ranch consisted of 799.72 acres of land.

By way of demonstrating that they had not proceeded fraudulently, respondents introduced evidence to show: first, that they had relied upon the statements of others concerning the number of acres in the ranch; second, that they were not aware of appellants' intention to use the ranch for cattle raising; third, that appellants made their own independent investigation of the premises and had the assistance of others to determine the size of the property and hadn't relied upon any representation of respondents.

Appellants also urge that certain of the irrigated lands were smaller in size than had been represented by respondent Melton. Appellants assert that respondent Melton represented that the alfalfa field contained 70 acres, whereas it appears there are about 37 acres. Respondent Melton's answer to this variance was that he was merely relating information that someone else had stated to him. Appellants counter with the showing that this ground had been leased and a settlement made between the tenant and respondent Melton on the basis of 27 acres of tillable land. Respondent Melton seeks to avert the conclusion of misrepresentation by testifying he did not mean there were 70 acres in the one piece of ground, but he meant there were 70 acres in three .pieces of irrigable ground. The ground which he was describing consisted of two 6-acre tracts and the 37-acre tract. Further, there was some evidence that appellants had made an independent investigation together with other parties, and that appellants had not relied upon representations made by the respondents.

Appellants testified they were fraudulently induced into purchasing the ranch upon the misrepresentation that respondents had made a gross profit of more than $13,-000, and had very little expense except for gas, oil, and tires. The record discloses that from the gross income of $13,812.75 there was a net income after expenses of $4,276.26. Earnings of appellants during their occupancy are as follows: 1958 gross income, $15,331.63, net income $4,084.76; 1959 gross income $22,822.82, net income $7,200.84. Appellants testified that demand had been made upon the Meltons for income tax returns in order to establish the profit and loss operation of the ranch, and they were in one way or another put off by the respondents. On the other hand, the respondents deny that these demands were

made, and maintain that no misrepresentation was made in this regard.

For guests to reach Williams Lake from a bridge crossing the river, it was necessary to traverse a portion of a neighbor's property. Representation was made by respondents that they held a lease upon the ground. Appellants assert a wilful, intentional misrepresentation in that respect. However there is evidence showing that appellants were aware that no easement for right-of-way existed over this adjacent property before the contract was entered into, and after the contract was negotiated appellants purchased the property necessary for the roadway.

There is also misrepresentation alleged by appellants on behalf of the respondents of an electric generator. Respondents did represent a four kilowatt generator as a five kilowatt generator. The generator was insufficient in capacity to furnish electricity for all of the electrical requirements on the ranch. Respondent Melton excuses this representation for the reason that he had been advised by an electrician that the generator was of the five kilowatt capacity.

Another misrepresentation alleged by appellants is that merchandise, consisting principally of fishing equipment, was not of the value as stated by respondents. Respondent Melton represented that the fishing equipment had a value of $380, whereas appellants state in their brief that it had a net value of $100.

Substantial improvements have been made upon the property by appellants. Some improvements have become part of the realty, and others are separable. There is ample evidence in the record on behalf of both parties that the property has not decreased in value since it was acquired by the appellants. There is evidence in the record of annual rental values of the property.

The trial court in its findings of fact found that the appellants had refused to make the payment due December 16, 1958, as required by the contract. The court further found that the respondents had made no false or fraudulent representations with intent to deceive the appellants or which were relied upon by the appellants or which induced appellants to purchase the property. The trial court also found that appellants made their own independent investigation of the property before purchasing it, and that they relied upon this investigation, and that they had their own attorney prepare the contract of sale.

The court also found that appellants had never offered to rescind the contract and had never offered to restore possession to respondents. There was also a finding that the amount of the down payment plus the value of the improvements comprised an amount not unequal to, and which bears a

reasonable relation to, the actual damages sustained by respondents.

A judgment was entered in favor of the respondents, canceling and annulling the agreements of sale, all deeds, contracts, and other instruments, and settling in respondents legal and equitable title to the ranch.

Appeal is taken from the judgment, the findings of fact and conclusions of law.

■ Appellants assign as error the finding of the trial court that the respondents had made no false or fraudulent statements with intent to deceive appellants, and upon which appellants relied. We cannot condone the conduct of respondents for termination of the surveyor's services prior to the completion of the survey, because they knew that appellants wanted established the location of corners and boundaries of the ranch.

■ Respondents, however, have countered with a showing that appellants purchased the land after making their own inspection, and also relying upon advice of a friend, a "water engineer." Such constitutes evidence upon which the trial court justified its finding of fact that no misrepresentation was made to the appellants upon which they relied. Where there is substantial, competent, evidence upon which the trial court could base its finding, such finding will not be disturbed on appeal.

Johnson v. Strong Arm Reservoir Irrigation District, 82 Idaho 478, 356 P.2d 67.

■ Appellants assign as error the finding that appellants' possession of the premises was wrongful. The following is the finding of the trial court:

"19. That the defendants were in possession of the premises under the sale agreement for one full operating season; that their possession of the same subsequent to April 3, 1959 was wrongful."

This finding is immaterial and unnecessary to the conclusions of law and judgment of the trial court. The finding of the trial court as set out is of no consequence because the fact that appellants were in possession for one full year cannot mean that they were in default. Nor does the fact that they were in possession subsequent to April 3, 1959, mean anything in and of itself, except in relation to the nonpayment of the contractual obligation.

■ Appellants assign as error the finding that they were in default on the contract. The trial court found that appellants purchased the property upon their independent investigation, and that of their agent; there being substantial evidence to sustain this finding, it follows that the appellants were obligated to make the full payment of $10,000 due under the contract, and that payment of any lesser sum placed them in default of the contract.

Appellants assign as error the finding that the amount forfeited by appellants bears a reasonable relation to the actual damages sustained by respondents. Appellants argue that they were entitled to a credit for their down payment, improvements made on the premises, interest, payment on another contract due on the premises, for a total of $40,950; that respondents are entitled to a credit of $16,331.34. The net credit due appellants under this computation is $24,618.66. In support thereof, appellants cite authority for the proposition that "a vendor who declares a forfeiture cannot retain as liquidated damages all payments by vendees when such payments are disproportionate to the amount of vendor's damages."

The case cited by appellants for this proposition is Kent v. Clark, 20 Cal.2d 779, 128 P.2d 868, 142 A.L.R. 576. The California case is predicated upon the proposition that fraudulent misrepresentation had been made, and therefore there was justification to excuse the failure to make payment under an executory contract. It having been decided by the trial court that no fraud existed herein, the case of Kent v. Clark, supra, is not applicable.

 In opposition to appellants' showing, the respondents represent that the value of permanent improvements will not exceed $1,007.50, that appellants have received personal property under the contract and bill of sale having a value of $11,455, plus other properties in the sum of $830. In addition, respondents average out the net income for a two-year period of the premises in the sum of $5,642.80. Respondents also urge that appellants took possession of 100 tons of hay at the time of the sale, having a value of $2,200, and further that appellants had received the benefit of the 1960 hay crop. Respondents give appellants credit for payments made on a certain note and mortgage on the premises. Respondents computed in their figures the total benefits received by appellants to be $32,407.50. However, they are in error in adding to their computation the amount of income from the hay and the amount of net income. The basis for the computation of the value of the use of the premises during this period of time is its reasonable rental value. Williamson v. Smith, 74 Idaho 79, 256 P.2d 784; McMahon v. Cooper, 70 Idaho 139, 212 P.2d 657.

 In Graves v. Cupic, 75 Idaho 451, 272 P.2d 1020, this Court recognized the established policy of law against the allowance of punitive damages for breach of contract in the absence of fraud, malice, oppression, or other sufficient reason; but it recognized that parties to a contract may agree upon liquidated damages in anticipation of a breach in any case where the circumstances are such that accurate determination of the damages would be difficult or impossible, provided that the

liquidated damages fixed by the contract bear a reasonable relation to actual damages, but that if the forfeiture or damages fixed by the contract are arbitrary and bear no reasonable relation to the anticipated damages, and are exorbitant and unconscionable, they are regarded as a "penalty" and the contractual provision therefor is void and unenforceable.

State ex rel. Robins v. Clinger, 72 Idaho 222, 238 P.2d 1145, has recognized that one of the elements of damages for breach of a contract for the sale of realty is the difference between the contract price and the market value of the property at the time of the breach, unless otherwise stipulated in the contract by the parties. This Court has also followed the rule that generally, where a defaulting purchaser has had possession of the property, the damages due the vendor are enhanced by the rental value during such occupancy. Nelson v. Hoff, 70 Idaho 354, 218 P.2d 345; Williamson v. Smith, 74 Idaho 79, 256 P.2d 784; Graves v. Cupic, supra.

The trial court in the case at bar did not make a finding on the correct measure of damages in declaring a forfeiture of the amounts paid by appellants. Therefore, insofar as damages are concerned, the court is directed to vacate that portion of the judgment. The trial court will determine the value of the premises at the time of the breach, rental value of the premises, and any other special damages suffered by the respondents, and determine the difference between the contract price and the market value of the property at the time of the breach. The vendor is also entitled to accrued rental and special damages. All such factors must be considered in determining whether the amount paid under the contract is reasonable as liquidated damages, or an unconscionable penalty. The court in its discretion may allow the parties to adduce additional evidence in the premises. Consideration should be given to the personal property transferred by bill of sale, and the appellants permitted to remove all personal property belonging to them which has not become part of the realty.

Appellants set forth additional specifications of error not supported by citation of authorities nor argued. Consequently, under the rule announced in State v. Snoderly, 61 Idaho 314, at page 319, 101 P.2d 9, at page 11, and Kimball v. Kimball, 83 Idaho 12, 356 P.2d 919, these will not be considered.

The judgment is affirmed insofar as it provides for rescission of the contract, and the cause is remanded with directions to enter judgment as directed herein.

Costs to appellants.

TAYLOR, C. J., and SMITH, KNUDSON, and McFADDEN, JJ., concur.