398 P.2d 228

**Joy A. ANDERSON and Elizabeth F. Anderson, husband and wife, Plaintiffs-Respondents,**

v.

**James I. MICHEL, John A. Michel and Lavera G. Michel, husband and wife, James I. Michel, Jr., and Mathersa L. Michel, husband and wife, Mary Lucille Michel, individually, and surviving spouse of James I. Michel, deceased, Mary Lucille Michel, Administratrix of the Estate of James I. Michel, Defendants-Appellants.**

No. 9441.

Supreme Court of Idaho.

Jan. 13, 1965.

J. Henry Felton, Lewiston, Prather & Wilson, Bonners Ferry, for appellants.

Stephen Bistline, Sandpoint, for respondents.

TAYLOR, Justice.

September 20, 1958, the plaintiffs (respondents), husband and wife, entered into a contract with the defendants (appellants) for the sale by plaintiffs to defendants of a farm in Boundary county. The consideration in part consisted of the conveyance by defendants to plaintiffs of a farm property in Union county, Oregon, which was subject to an incumbrance of $64,000, which plaintiffs assumed and agreed to pay, and the conveyance by defendants to plaintiffs of a parcel of land in Payette county, Idaho. Defendants' equity in the two parcels to be conveyed by them to plaintiffs, and which constituted the down payment on the land in Boundary county, was $46,-000, and the agreed balance of the purchase price was $80,000. Interest was to be paid on the balance due at 5%, payable annually commencing November 1, 1959, and the principal was to be paid by application there-to of the proceeds of one-fourth of all crops grown upon the Boundary county land, until the balance was fully paid. In addition the farm machinery owned by the respective parties was to be left on their respective properties and transferred therewith. Plaintiffs' machinery being of greater value than defendants', the agreed difference of $5,767.90 was to be paid to plaintiffs by the defendants in annual installments of $1,000 commencing November 1, 1959, with interest at 6% per annum.

The contract further provided for conveyance of the Boundary county property to defendants by warranty deed upon performance of the contract. It further provided that time was of the essence and that in case of default the vendors at their option could declare the contract null and void, retake possession and retain all payments and improvements made by defendants as liquidated damages. Thirty days' notice of default was provided to be given by plaintiffs to defendants.

Defendants entered into possession of the Boundary county property in the fall of 1958 and began farming operations. They remained in possession and farmed the property during the years 1959, 1960, and 1961, and began farming operations and planting in the fall of 1961 for the crop year 1962. Payments were made as required by the contract for the years 1959 and 1960. Defendants failed to make payments due

in the fall of 1961. Notice of default was given November 29, 1961.

This action was commenced by plaintiffs February 15, 1962, for cancellation of the contract and possession of the property. By answer and counterclaim defendants alleged that they were induced to enter into the contract by false and fraudulent representations made by plaintiffs. Defendants also alleged the total amount of payments made by them, claiming forfeiture of such payments would impose a penalty under the doctrine announced in Graves v. Cupic, 75 Idaho 451, 272 P.2d 1020 (1954), and prayed for restitution and damages.

Plaintiffs, by supplemental complaint, alleged that the contract was entered into in the state of Washington and was held in escrow and by its terms was to be performed in the state of Washington, and that under Washington law, the forfeiture provision in the contract would be strictly enforced. Plaintiffs also further alleged that the payments made were not excessive in relation to their actual damages, and that no penalty would be imposed by the enforcement of the forfeiture provision.

The contract provided attorney's fees incurred in any litigation for forfeiture or enforcement of the contract should be taxed as costs by the successful party.

In April, 1962, pursuant to agreement between the parties, the defendants surrendered, and plaintiffs accepted, possession of the Boundary county land, each party reserving all other rights and claims involved in the pending litigation.

Defendant James I. Michel was the father of defendants John A. Michel and James I. Michel, Jr. Prior to trial the senior James I. Michel died and his widow, Mary Lucille Michel, administratrix of his estate, was substituted as a party defendant.

Upon trial the court found in favor of plaintiffs and against defendants and entered its decree quieting in plaintiffs the title and right of possession of the Boundary county land, adjudged the cancellation of the contract and denied any relief to defendants. Defendants prosecuted this appeal from the judgment. Plaintiffs filed a cross-appeal from the judgment of the court denying their claim to attorney's fees for the successful prosecution of the action.

The representations alleged to have been fraudulently made by plaintiffs were summarized by the trial court as follows:

"(a) The lands were worth upwards of $140,000.00 when in reality the lands were worth only $80,000.00;

"(b) That the machinery was in good condition and proper for the farming of the lands;

"(c) That the lands had continually been producing crops sufficient to make the payments upon the contract and to provide a good living for the defendants and would continue to do so;

"(d) That the lands were sufficiently protected by dikes against flooding

**234**

and the defendants need have no fear of crop failure;

"(e) That the sale was in good faith under conditions favorable to the defendants, that plaintiffs would stand by their dealings and see that defendants would be able to make the payments and enjoy good crops and good living conditions and that the lands would surely pay off the indebtedness within a few years, and

"(f) As an amendment permitted at the trial, that the lands were free of weeds and quack grass."

The court found as follows:

"(14) As regards the foregoing allegations of fraud, by the defendants charged against the plaintiffs, the Court finds that each and all of said representations, had they been made, were not such as could constitute actionable fraud in the negotiations of the parties leading into the execution of the contract. The Court does not find from evidence clear and convincing in nature that any misrepresentations were made by the plaintiffs, or chargeable to the plaintiffs. The Court does not find evidence clear and convincing in nature that the plaintiffs made any representations to the defendants, as alleged, knowing the same to be false or with an intent that the same would be relied upon by the defendants; the Court fur-

ther finds that the defendants did not rely upon any statements or representations made by the plaintiffs to the defendants as alleged by defendants.

"(15) * * *

"(16) All of the defendants entered into the negotiations, possessed of farming experience, and the defendant James I. Michel, who may be referred to as the Senior Michel, who is now deceased, had many years of farming experience. The defendants, and some farmer-in-laws of the defendants all came to Boundary County, and examined the property to such extent that they desired doing so during the harvest time of the year 1958, even going so far as to digging into the soil. In view of the fact that the defendants did personally visit the property, were experienced farmers, and had adequate opportunity to investigate the transaction and determine whether or not the negotiated contract balance was fair, the Court finds that the defendants made their own determination with respect to the entering into the transaction and did not rely upon any statements which they alleged to have been made by the plaintiffs to them. * * *"

The court's findings as to the alleged fraudulent representations are supported by the evidence and are conclusive of the issue of fraud on this appeal. I.C. § 13–219;

Thomson v. Marks, 86 Idaho 166, 384 P.2d 69 (1963).

The court also found that during the three and a half years of defendants' possession and farming of the Boundary county property they made no complaint or claim that any misrepresentations had been made to them, and that the first time they made such complaint was after this action was commenced, and further:

"(19) Any of the misrepresentations by the defendants charged against the plaintiffs, as aforesaid, are of such nature that the same would necessarily have been found out and discovered by the defendants, had the same been made, during the first year that the defendants were in operation of the farm and defendants claim of fraud and misrepresentation is barred by the doctrine of laches and estoppel."

▇▇▇▇ The record does not support this last finding in respect to one element of the fraud alleged. The record establishes the fact that in 1961 flood waters in the Kootenai river reached the highest point of any year on record, and resulted in flooding by seepage through and under the dikes more of the land involved than previously had been covered. As a result a large part of defendants' crops were destroyed by water. However, plaintiffs had owned and farmed the property only during the two years prior to the sale to defendants. True, as owners they were charged with knowledge of the truth or falsity of representations made by them as to the character of the property, but, they could not be charged with knowledge of, or be required to anticipate, an act of God. Cf. Harper v. Johannesen, 84 Idaho 278, 371 P.2d 842 (1962). Moreover, the evidence shows that during the two preceding years of defendants' occupancy seepage waters rose in a comparatively small area damaging some of their corps. Of this they made no complaint. Furthermore, defendants' surrender of possession in the spring of 1962 was voluntary and they sought no extension of time for making the payments, nor sought any other adjustments of the terms of the contract which the high waters of 1961 might have suggested, in order to enable them to perform their contract.

As to defendants' claim that the forfeiture of the amounts paid by them upon the contract would constitute an unenforceable penalty, the court found:

"(22) In entering into this agreement, where the balance of $80,000.00 was struck as due to the plaintiffs from the defendants, the negotiated price of the defendants' property was $38,000.00 for their equity in the Alicel [Ore.] property, and $8,000.00 for the Fruitland [Ida.] property, making a total down payment of $46,000.00. The defendants thereafter paid on the $80,-000.00 contract the sum of $9,352.00,

excluding $2,000.00 which was an insurance payment for the loss of a grain elevator on the premises. The defendants paid taxes in the amount of $10,014.98, making a total payment by the defendants on the transaction, for the real property, in the sum of $65,366.98

"(23) With the negotiated price on the Alicel and Fruitland property totaling $46,000.00, the Court finds the total contract price for the Boundary County property was one hundred and twenty-six thousand dollars.

"(24) The fair market value of the Boundary County farm, including the buildings at the time of default, was $92,860.00, plus $2,000.00 paid by the Insurance Company for the loss of the grain elevator which burned down. The reasonable rental value of the Boundary County farm was $9,947.00 per year for three years, or a total of $28,410.00.

"(25) In calculating damages due to the plaintiffs for the breach of the contract, the plaintiffs suffered a loss of $31,140.00 being the contract price less the fair market value at time of breach. The plaintiffs are entitled to a reasonable rental of $28,410.00, making a total of $57,550.00. The foregoing does not consider the machinery.

"(26) Actual damages here sustained by the plaintiffs do bear a reasonable relationship to the sums paid by the defendants on the contract, and are not exorbitant or unconscionable to the extent that they could be considered a penalty under the provisions of Idaho law, considering the magnitude of the transaction."

 Defendants complain that the court did not find the market value of the property at the time the contract was entered into. That value was immaterial to the issues presented.

"The measure of damages for breach of an executory contract of sale is the difference between the contract price and the market value of the premises at the time of the breach unless by the contract the parties have otherwise stipulated." State ex rel. Robins v. Clinger, 72 Idaho 222, 230, 238 P.2d 1145, 1150 (1951).

This rule was followed in Melton v. Amar, 83 Idaho 99, 358 P.2d 855 (1961).

What was said by the Utah court in Cole v. Parker, 5 Utah 2d 263, 300 P.2d 623, 626 (1956) is applicable here:

"Except under special circumstances, no fiduciary obligations exist between a buyer and seller of any property, Dyke v. Zaiser, 80 Cal.App.2d 639, 182 P.2d 344, and the present case furnishes no indication of any confidential relationship whatsoever and indicates that the parties were competent to contract

and did deal at arms length. Under such circumstances, it has been stated many times that the court will not inquire into the adequacy of consideration if it is legally sufficient. O'Neill v. Mutual Life Ins. Co., 51 Utah 592, 172 P. 306; Moruzzi v. Federal Life & Casualty Co., 42 N.M. 35, 75 P.2d 320, 115 A.L.R. 407; Seth v. Lew Hing, 125 Cal.App. 729, 14 P.2d 537, 15 P.2d 190. Appellants refer to the contract into which they entered as 'unconscionable' and cite cases where such contracts were avoided, but in each of them, evidence revealed a fiduciary relationship, Howells v. Pacific States Savings, Loan and Bldg. Co., 21 Utah 45, 60 P. 1025, incompetency of one of the bargaining parties, or some other indication of actual fraud. See Annotation 15 Am.Dec. 572. In the absence of fraud or imposition, the parties are bound by the price or measure of value they have agreed on, and such price must be paid notwithstanding it may be excessive. The courts cannot supervise decisions made in the business world and grant relief when the bargain proves improvident."

See also, Carlson v. Hamilton, 8 Utah 2d 272, 332 P.2d 989 (1958).

Defendants assign as error the finding of the trial court that the reasonable rental value of the Boundary county farm for the three-year period was $28,410. This finding was based upon the testimony of the witness Kirby. This witness was permitted to give his opinion as to the cash rental value, based upon his experience and training in real estate appraisals, and his examination of the property. He testified that the customary rental agreement between landlord and tenant in the area, provided for one-third of the crop to the landlord and two-thirds to the tenant; that he had found only one farm tenancy in which a cash rental was agreed upon. Based upon a 1/3–2/3 division, he testified that $26,588.25 would be a reasonable rental for the farmland here involved for the three years of defendants' occupancy. On a cash rental basis, he testified:

"Another method I used in this, the landlord is certainly entitled to the amount of his taxes which is $3,425, approximately. He is entitled to enough to pay insurance on buildings. I have estimated this at $125. He is entitled to something for buildings, maintenance, because buildings are not going to last forever. I have charged $400. per year for this; and he is entitled to interest on his investment and I have allowed 6% interest on $92,000., that is $5,520. Add these figures together and you come up with an estimate of reasonable rent, based on this plan, of $9,470."

238

The $92,000 was the witness' opinion of the fair market value of the farmland in the fall of 1961.

■ Application of the cash rental basis in this case was erroneous for the reason that the reasonable rental value for this property should have been determined upon the same basis as other like property in the neighborhood, influenced by other factors, if any, peculiar to this particular farm. In Union Pac. R. Co. v. United States, 313 U.S. 450, 473, 61 S.Ct. 1064, 1077, 85 L.Ed. 1453, 1470, the court said:

"To determine fair rental value the going rates of rental for similar facilities in the community are significant, as are the rentals prospective tenants are willing to pay. Likewise evidence of the overall cost and the overall value of the properties would be material. The cost of furnishing the facilities, including the normal return on capital employed in like enterprises would have weight. * * *"

In addition to his testimony that the crop rental basis was almost universal in the area, the witness further testified that cash rental agreements were not favored because of the flood hazard.

■ The purpose of determining the reasonable rental value in such cases is to enable the court to make an allowance which will compensate the vendors for the loss they have sustained by reason of the vendees' possession of the premises. In this case the plaintiffs could not have anticipated a greater return on their investment in this property than would be provided by a crop rental lease. The highest rental value which can be sustained by the evidence in this case is the $26,588.25, testified to by the witness Kirby on a crop share basis.

■ The trial court made no finding as to the amount of interest paid by defendants on the unpaid balance of the contract price. Evidence shows a minimum of $8,253.09 interest paid by defendants during this three-year period. The unpaid balance of the contract price represented plaintiffs' equity in the farm. The rental value included a return on this capital asset. Therefore, the amount of interest paid must be deducted from the reasonable rental value in order to avoid allowing plaintiffs a double return, one on the whole farm (rent), and one on the portion thereof represented by the unpaid balance of the purchase price (interest).

■ In this case it was proper to allow defendants credit for the $10,014.98 taxes paid by them. This was a part of their contract obligation, the same as their payments upon the principal balance. On the other side of the account the rental value fixed would not include the taxes, because, in the absence of an agreement to the con-

trary, the landlord pays the taxes. So, in this case, no loss or damage is allowed to the vendors for taxes. The result is tabulated as follows:

| | | |
|---|---|---|
| Paid by defendants: | | |
| By property conveyed | | $ 46,000.00 |
| Taxes paid | | 10,014.98 |
| Paid on principal | | 9,352.00 |
| | Total | $65,366.98 |
| Damages sustained by plaintiffs: | | |
| Loss on contract price | | $31,140.00 |
| Rental | $26,588.25 | |
| Less Int. received | 8,253.09 | |
| | | 18,335.16 |
| | Total | $49,475.16 |

This would result in an overpayment of plaintiffs' damages in the sum of $15,891.82.

The court's refusal to allow plaintiffs an attorney's fee, provided for in the contract, we assume was based upon the fact that plaintiffs' actual damages were overpaid. This was a proper exercise of the equitable powers of the court. Having in mind the costs and expenses of this litigation, the possible expense of a resale of the property, and the magnitude of the transaction, we conclude that the amount retained by plaintiffs as liquidated damages bears a reasonable relation to the actual damages sustained and is not so exorbitant and unconscionable as to constitute a penalty. Cf. Graves v. Cupic, 75 Idaho 451, 272 P.2d 1020 (1954).

As to the machinery retained by plaintiffs, the court found:

"(27) The reasonable rental value of the machinery, and depreciation thereto, after more than three years of use by the defendants, as against the balance remaining thereon, is such that the plaintiffs are not unjustly enriched at the expense of the defendants by retention of the machinery, and the amounts paid thereon."

This finding is supported by the evidence.

Defendants contend that, the plaintiff Anderson being a licensed real estate agent in the state of Washington and associated with the Cecil Johnson Real Estate Agency at Walla Walla, which firm handled the transaction between these parties, a confidential fiduciary relationship existed between the agency, the plaintiff

**240**

Anderson, and the defendants, by reason of which it became the duty of the plaintiff Anderson, as well as Johnson, to make full disclosure to defendants of all facts within their knowledge affecting the value of the Boundary county farm, or the advisability to defendants of the proposed transaction. Defendants further contend that by reason of this confidential relationship they were relieved from the burden of proving fraud alleged by them; that the transaction was presumed to be fraudulent; and that the burden was cast upon plaintiffs to establish their utmost good faith and the absence of any fraudulent conduct on their part.

The court found that both parties paid a real estate commission to the Cecil Johnson firm. Presumably, defendants paid a commission for the sale of their Oregon and Idaho properties, and that plaintiffs paid a commission for the sale of the Boundary county farm. The court found that:

"(31) The plaintiffs were guilty of no actionable fraud in the inducement of the contract in question."

It is apparent upon the record that the defendants knew of the dual agency of the Cecil Johnson firm and consented to it. They dealt with Anderson as owner of the Boundary county property and not as their confidential agent. The fiduciary relationship contended for was not shown. 12 Am.Jur.2d, Brokers, § 87; 3 Am.Jur.2d, Agency, § 233; Shepley v. Green (Mo. App.) 243 S.W.2d 772 (1951); Warner

Company v. MacMullen, 381 Pa. 22, 112 A.2d 74 (1955); Quest v. Barge (Fla.) 41 So.2d 158 (1949).

The conclusion we have reached makes it unnecessary to determine whether the contract involved was to be construed and enforced according to the law of the state of Washington, or that of the state of Idaho.

Judgment affirmed.

Costs to respondents.

McQUADE, C. J., and McFADDEN, SMITH and KNUDSON, JJ., concur.