404 P.2d 343

Sue VALDEZ, Plaintiff-Appellant and Cross-Respondent,

v.

Gerald B. CHRISTENSEN and Elna C. Christensen, husband and wife, Defendants-Respondents and Cross-Appellants.

No. 9493.

Supreme Court of Idaho.
July 28, 1965.

Bistline & Bistline, Pocatello, for appellant.

288

Racine, Huntley & Olson, Pocatello, for respondents.

TAYLOR, Justice.

April 4, 1961, defendants (respondents and cross-appellants) as purchasers entered into a contract with Norman Roberts and wife as vendors for the purchase and sale of a farm in Bear Lake county, together with certain dairy cattle and equipment thereon. The contract price was $90,000, of which defendants paid $7,500 on execution of the agreement. August 18, 1961, Roberts and wife in an exchange of properties transferred their interest in the contract and property to the plaintiff (appellant and cross-respondent). The parties stipulated that this transaction constituted an assignment of the original contract.

August 22, 1961, a new contract for the sale by plaintiff to defendants of the same property was executed by the parties hereto. The new contract required a payment of $5,000 on or before October 15, 1961; $12,500 on or before January 5, 1962; and the balance of $65,000 in annual installments of $6,000 commencing October 15, 1962. At the time the contract was rewritten, defendants gave plaintiff a mortgage on farm property in Utah to secure the first two payments. June 20, 1962, defendants conveyed the Utah property to plaintiff for the agreed consideration of $17,500, thus making the first two payments required by the new contract, and a total of $25,000 paid on the purchase price.

Time of performance was made of the essence of the agreement and the contract provided that in case of default by the purchasers the vendor at her option could rescind the contract upon sixty days written notice, and all payments made and all improvements erected on the property would be forfeited to the vendor as liquidated damages and rental. The contract also provided that in event either party brought action thereon, the losing party would pay

to the prevailing party a reasonable attorney's fee.

Defendants took possession of the farm, stock and equipment in the spring of 1961, and continued in such possession through the farming season of 1962. Defendants failed to make the payment due October 15, 1962. After giving the required notice, plaintiff commenced this action to quiet title to the property. By answer and counterclaim, defendants sought rescission on the ground that they had been induced to enter into the contract by false and fraudulent representations made to them by Norman Roberts. They also sought recovery of payments made and reimbursements for improvements and alleged that forfeiture of the amount thereof, over and above reasonable rental, would be unlawful.

The representations which defendants contend were fraudulently made by plaintiff's predecessor, and upon which they now rely for reversal, are summarized from their assignments of error as follows:

(1) That the property was worth $90,000, when in fact it was worth only $59,590.

(2) That there were appurtenant to the farm 13½ shares of stock in the Ovid Irrigation Company, when in fact there were only 6½ such shares.

(3) That there was adequate water to irrigate 52 acres, when in fact the water right available was adequate to irrigate only one-third of the crops once, instead of twice as needed.

(4) That the farm would produce 20 to 35 bushels of wheat per acre, when in fact it would produce only 3 bushels per acre.

(5) That custom harvesting would be available to defendants, from which they could earn $4,000 to $5,000 per year, when in fact they earned only $1,845 in two years.

The representations set out in paragraphs (1), (2) and (5) above were not alleged in defendants' counterclaim. However, since they are discussed in the briefs we shall mention them here.

The court found the value of the property at the date of the sale was $84,700. There was no confidential or fiduciary relationship between the parties to the contract. They dealt at arms length. Defendants examined the property and were their own judges of its worth. In the absence of fraud or mistake the court could not reduce the price, nor relieve defendants from a bad bargain, merely because they had agreed to pay more for the property than it was worth. Walker v. Nunnenkamp, 88 Idaho 222, 398 P.2d 444 (1965); Anderson v. Michel, 88 Idaho 228, 398 P.2d 228 (1965).

The record reveals no representation by Mr. Roberts as to the number of shares of stock in the Ovid Irrigation Company. His only representation was as to the adequacy of the water available. Defendant Christensen and his witness Carlsen, a neighbor, testified 1961 was an exceptionally dry year. The evidence was conflicting as to what representations were made as to water sup-

ply and crop production. Mr. Carlsen testified defendants' poor yield was due in part to late spring planting.

The amount defendants would be able to earn by custom harvesting for others was obviously a matter of opinion as to future possibilities, and to a large extent dependent upon defendants' management and enterprise.

On the issue of fraud the court found:

"7. That Norman H. Roberts did not misrepresent anything in connection with the entering into of the agreement hereinabove referred to, and the defendants did not rely upon any statements made by Roberts in connection thereof, but relied entirely on his own examination of the property and his own judgment in entering into the said agreement."

The finding is supported by substantial and competent evidence, and is conclusive.

The trial court entered judgment quieting title in plaintiff and declaring her right to the possession of the property. The judgment required plaintiff to pay defendants $2,700. This partial restitution apparently was based upon the theory that forfeiture of the entire amount paid on the purchase price would constitute a penalty. Plaintiff appealed from the provision of the judgment requiring this payment to defendants. The findings indicate that this result was arrived at as follows:

"5. That the market value of the property included in said agreement was at the date of the entering into of said agreement of the value of $84,700.00 made up as follows:

| | |
|---|---:|
| "Land without improvement | $50,000.00 |
| "Improvements except building which was partially destroyed by fire, but including fences, irrigation sprinkler system and granaries. | $18,000.00 |
| "Farm machinery, including the D–2 crawler tractor. | $ 5,000.00 |
| "Building partially destroyed by fire during tenancy of defendants. | $ 2,250.00 |
| "D–2 Crawler tractor | $ 1,000.00 |
| "Dairy herd of 31 cows, 10 heifers and 5 calves. | $ 8,450.00 |
| Total | $84,700.00 |

"That said property was diminished in value by reason of the loss of the following items:

| | |
|---|---:|
| "Dairy herd in its entirety | $ 8,450.00 |
| "D–2 Crawler tractor | $ 1,000.00 |
| "Damage to building by fire during tenancy of defendants | $ 2,000.00 |
| Total | $11,450.00" |

The dairy cattle were sold by defendants during their occupancy. Defendants collected $1,000 insurance on a building which was partially destroyed by fire. A D–2 caterpillar tractor was traded by defendants for a credit of $1,000 on the purchase price of a D–4 tractor. The foregoing depreciation plus rental value of $10,000 for the two years of defendants' occupancy was deducted from the $25,000 paid on the purchase price, leaving a balance of $3,550. This amount the court determined should be repaid to the defendants, less plaintiffs' attorney's fee, which the court fixed in the sum of $850, and entered judgment in favor of the defendants for restitution of $2,700.

■ As the record now stands it does not appear that a forfeiture of $2,700 as additional damages for the breach of a contract of the magnitude of that here involved would be unconscionable or sufficient to amount to a penalty. However, the court did not find the value of the property on the date of the breach; nor find that the property had depreciated in value during defendants' occupancy, other than the three specific losses set out above. If the value of $84,700, which the court fixed as of the date of the contract, was also the court's evaluation as of the date of the breach, then plaintiff would be entitled to the difference as additional depreciation. In case of a decline in value, the difference between the contract price and the value of the property on the date of the breach, is an element of vendor's damages. Melton v. Amar, 83 Idaho 99, 358 P.2d 855 (1961). However, since there was no finding as to the value of the property on the date of the breach, we are left to speculate as to whether there was a depreciation in the value of the property during defendants' occupancy and, if so, the amount thereof. Also, there was evidence that land values had increased during the period involved. Any increase in value, whether due to a rising market or to improvements made by defendants, would diminish plaintiff's damages resulting from the breach to the extent that such increase exceeded the contract price. Since there was no finding as to the value of the property at the date of the breach, the increase, if any, was not determined.

■■ On their cross-appeal defendants have assigned errors involving the court's finding of reasonable rental value in the sum of $5,000 per year. The first of these is the admission, over defendants' objections, of testimony of the witness Sam Hymas as to the rental value of the property. Defendants' objections were that the witness was not qualified to give an opinion thereon; he was not sufficiently familiar with the property; and he based his opinion on assumptions as to water available for irrigation, crop production, and milk production, which were not supported by the evidence. These objections were con-

cerned with the weight to be given the opinion of the witness, rather than its admissibility. The witness had been a licensed real estate broker in the area for sixteen years, and had examined the property. The availability of water and the productivity of the property were issues being tried. The weight which the court accorded the witness' opinion as to rental value would depend largely on its determination as to whether the water supply, crop and dairy production, assumed by the witness, were supported by evidence. In evaluating his testimony it was for the court to determine to what extent, if any, the witness based his opinion upon erroneous assumptions.

Defendants also assign as error the refusal of the court to permit the witness Carlsen to testify as to the rental value of the farm land exclusive of the dairy operation. The witness was a neighbor who owned and operated farmland which was bordered on three sides by the land involved. He had had extensive acquaintance with the operation and rental of farm lands in the area concerned. He declined to give an opinion of the rental value of the dairy operation because of his lack of experience in the dairy business. His opinion as to the rental value of the farm lands was rejected on the ground that the farm and dairy involved were sold as, and were to be operated as, a unit and that an opinion as to rental value must include both. This was error. The contract described some 725 acres of land in addition to the livestock. Much of the land was devoted to dry farm production of wheat for the market, and had no relation to the dairy operation. Hay and other feed crops were fed to the dairy cattle. However, the witness was familiar with the market values of such crops as well as the market value of the wheat crops. The rental value of the whole property described in the contract was made up of the combined rental value of its operating parts. The witness was well qualified to give an opinion as to the rental value of a most important part of the property. His testimony would have been helpful to the court in determining the rental value of the whole property.

The court found the rental value to be $5,000 per year. This finding is seriously challenged by evidence of past production records, particularly the income returns of the former owner. These indicated that the highest annual profit was $4,419, and a rental value of one-half that amount, based on a landlord's share of 50%. It, therefore, appears that the excluded evidence may have had an important bearing on the issue of rental value.

Having regard for the uncertainty arising from the record as to whether the property depreciated or appreciated in value during

defendants' occupancy, and the error excluding the testimony affecting the finding of rental value, we conclude that the judgment should be reversed and the cause remanded to the trial court with directions to reopen the case and permit the parties to introduce additional evidence on these issues, and any other issues involved in a determination of the damages arising from the breach of the contract. From all the evidence, including any additional evidence, the court should make specific findings as to the value of the property at the date of the breach of the contract; and as to plaintiff's damages; and determine therefrom whether enforcement of the forfeiture clause of the contract will result in imposition of a penalty; and enter judgment accordingly, granting or denying restitution, in whole or in part, in conformity with the doctrine announced by this court in Walker v. Nunnenkamp, 88 Idaho 222, 398 P.2d 444 (1965), 84 Idaho 485, 373 P.2d 559 (1962); Anderson v. Michel, 88 Idaho 228, 398 P.2d 228 (1965); Nichols v. Knowles, 87 Idaho 550, 394 P.2d 630 (1964); Melton v. Amar, 86 Idaho 262, 385 P.2d 406 (1963); Melton v. Amar, 83 Idaho 99, 358 P.2d 855 (1961); Miller v. Remior, 86 Idaho 121, 383 P.2d 596 (1963); Howard v. Bar Bell Land & Cattle Co., 81 Idaho 189, 340 P.2d 103 (1959); Graves v. Cupic, 75 Idaho 451, 272 P.2d 1020 (1954).

It is so ordered.

Both parties having prevailed in part, no costs are allowed.

McQUADE, C. J., and McFADDEN, SMITH and KNUDSON, JJ., concur.